Exhibit A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HUNTLEIGH USA CORPORATION, Plaintiff, - against - THE UNITED STATES, Defendant. | No. 03-2670C<br>Judge Margolis |

**PLAINTIFF'S FIRST REQUEST**
**FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims, plaintiff Huntleigh USA Corporation ("Huntleigh"), by and through its attorneys, hereby requests that the defendant, the United States of America (the "government"), produce the following documents and tangible things within its possession, custody or control for inspection and copying at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, on July 13, 2005, in accordance with the definitions and instructions annexed hereto as Exhibit A.

**DOCUMENTS REQUESTED**

1. All documents identified by the government in its Initial Disclosures dated April 22, 2005.

2. All documents referring or relating to or concerning the testimony of John Magaw, former Under Secretary of Transportation for Security, before the United States

Congress on January 23, 2002, including, without limitation, (i) all copies of Mr. Magaw's prepared statement (including drafts thereof); and (ii) any correspondence, memoranda, communications (electronic or otherwise) or other documents relating thereto.

3. All documents concerning the Transportation Security Administration's ("TSA's") Report to Congress on Transportation Security, dated March 31, 2003, including, without limitation, (i) drafts of the Report; and (ii) any correspondence, memoranda, communications (electronic or otherwise) or other documents relating thereto.

4. Any reports, publications, testimony, memoranda, correspondence or other documents in which the government, prior to September 11, 2001, informed private screening companies and/or the public that it might (i) assume responsibility for airport passenger and baggage screening or (ii) otherwise prevent private screening companies from continuing to operate their businesses.

5. All studies, reports, memoranda or other documents concerning the economic impact that the Act has imposed on Huntleigh, any other private screening companies and/or the airport security industry in general.

6. All documents concerning the value of Huntleigh's property, including, without limitation, its passenger and baggage screening contracts with airlines, its going-concern value and/or its goodwill.

7. The TSA budgets for each of the fiscal years 2002 to 2005 and the proposed TSA budget for fiscal year 2006, <u>or</u> those portions of the foregoing actual and proposed budgets that pertain to passenger and baggage screening.

8. Documents sufficient to identify the costs incurred and monies received by the TSA in connection with airport passenger and baggage screening, including, without limitation,

documents concerning (i) the TSA's spending on wages, benefits, other labor costs, hiring, background checks, training, equipment and other matters; and (ii) the TSA's collection of fees from passengers and/or airline carriers.

9. All contracts or other agreements between the government and any private screening company for the provision of passenger and/or baggage screening at airports, including, without limitation, (i) any such documents, including all contracts, relating to Globe Aviation Services Corporation and all communications (internal and external) and documents relating thereto; and (ii) any such documents in which the government agreed to pay money to a private screening company as compensation for the government's takeover of passenger and baggage screening.

10. All documents concerning the settlement of any post-September 11 claim involving the government and a private screening company, including, without limitation (i) all executed settlement agreements; (ii) documents reflecting the settlement amount, if any, for each resolved claim; and (iii) any documents in which the government agreed to pay money to a private screening company as compensation for the government's takeover of passenger and baggage screening.

11. All documents concerning the performance of consulting services by Huntleigh and/or its affiliates for the government on issues pertaining to passenger and baggage screening.

12. All documents concerning the government's assertion (as articulated in its motion to dismiss dated March 25, 2004), that its replacement of private screening companies was a valid and proper exercise of the government's police power, including, without limitation,

documents supporting any assertion that Huntleigh and/or other private screeners "fail[ed] to adequately protect the public."

13. All documents concerning the government's consideration, following passage of the Aviation and Transportation Security Act (the "Act"), to hire Huntleigh to perform passenger and baggage screening at domestic airports, including, without limitation, documents concerning (i) the criteria used by the government in awarding such work; (ii) the reason or reasons why Huntleigh was awarded work at its then-existing locations; and (iii) the reason or reasons why Huntleigh was awarded work at new locations.

14. All documents concerning the adequacy of Huntleigh's and other private screening companies' performance as passenger and baggage screeners from January 1, 1998 until the government's takeover, including, without limitation, (i) documents concerning compliance (or alleged non-compliance) with federal laws, regulations and guidelines; (ii) testing results or other information concerning the identification by screeners of dangerous objects in baggage, cargo and/or on individuals; and (iii) documents concerning or reflecting any criticism, evaluation or analysis of Huntleigh's performance as a screener of passengers and baggage.

15. All documents concerning the adequacy of the TSA's performance as a passenger and baggage screener, including, without limitation, (i) documents concerning compliance (or non-compliance) with federal laws, regulations and guidelines; and (ii) testing results or other information concerning the TSA's identification of dangerous objects in baggage, cargo and/or on individuals (including the results of tests performed by the TSA's Office of Internal Affairs and Program Review, the United States General Accountability Office, and the Department of Homeland Security's Office of Inspector General, among others).

16. For each of the years 2002 to 2005, documents sufficient to identify (i) the number of former Huntleigh workers who were employed by the TSA as screeners, Federal Security Directors or supervisors; and (ii) the number of individuals formerly employed by other private screening companies who were employed by the TSA as screeners, Federal Security Directors or supervisors.

17. All documents concerning a report, dated April 16, 2004, which was prepared by BearingPoint, Inc. and entitled "Private Screening Operations Performance Evaluation Report," including, without limitation, (i) drafts of the Report; and (ii) any correspondence, memoranda or other documents relating thereto.

18. All documents concerning a certain report that was prepared by the Department of Homeland Security's Science and Technology Directorate concerning aviation security, and which was cited by author Eric Lipton in a New York Times article dated June 5, 2005, including, without limitation, (i) drafts of the Report; and (ii) any correspondence, memoranda or other documents relating thereto.

19. All documents concerning a certain "Passenger Screener Performance Improvement Study" that was completed by the TSA in or about July 2003, including, without limitation, documents addressing or otherwise referring to any alleged deficiencies with passenger and baggage screening identified therein.

20. To the extent not covered by Document Requests 17 to 19, all reports, studies and/or publications that have been prepared, made, given or issued by the government since September 11, 2001 concerning aviation security, including, without limitation, (i) all such documents prepared by the TSA, the Department of Homeland Security's Office of Inspector General, the United States General Accountability Office, and/or the Department of

Transportation's Office of Inspector General, among others; (ii) all such documents prepared by third party consultants to the government; and (iii) any internal drafts, memoranda or communications relating thereto.

21. All manuals, guidelines and other documents concerning the TSA's training of passenger and baggage screeners.

22. Documents sufficient to identify all security equipment that the government has purchased since September 11, 2001 to enhance aviation security.

Dated: June 10, 2005
New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Jonathan J. Lerner /w/ TC

Jonathan J. Lerner (attorney of record)
Lauren E. Aguiar
William J. O'Brien
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Plaintiff

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. Time Period. Unless otherwise specified, the time period for the documents sought in this request is from January 1, 1998 to the date on which you produce documents in response to this discovery request. Documents created prior to January 1, 1998 that have been examined, consulted or used in any way since January 1, 1998 shall be produced in response to this discovery request.

2. FAA Proceeding. The parties in this action are also currently involved in a matter pending before the Federal Aviation Administration Office of Dispute Resolution for Acquisition, entitled Contract Dispute of Huntleigh USA Corporation Under Contract DFTA-01-02-C-04025, Docket No. 04-TSA-008 (the "ODRA Proceeding"). The production of documents in response to the requests propounded herein shall not be construed as discharging any disclosure obligations that the government might have in the ODRA Proceeding. Nor shall the discovery requests issued in this action limit Huntleigh's right to independently seek information responsive to its claims and defenses in the ODRA Proceeding.

3. Withheld Documents. In accordance with RCFC 26(b)(5), if a responsive document is withheld under a claim of privilege or other ground of non-production, a privilege log is to be furnished at the time that documents are produced. This privilege log shall indicate as to each such document: (i) the type of document (e.g., letter, memorandum, etc.); (ii) its general subject matter; (iii) its date; (iv) such other information as is sufficient to identify the document, including the author, recipient, sender, indicated or blind copies, and number of pages; and (v) the legal ground or grounds upon which it is being withheld.

4. Redacted Documents. Each request for a document to be produced contemplates production of the document in its entirety. If any portion of an otherwise responsive document is withheld under a claim of privilege or other ground of non-production, that portion shall be deleted or redacted from the document and the rest of the document shall be produced. If any portion of an otherwise responsive document is deleted or redacted, that portion is to be added to the privilege log referred to above, along with the corresponding legal ground or grounds upon which the non-production is based.

5. The term "document" is used herein in the broadest possible sense and means any written, graphic or other recorded (whether visually, electronically, magnetically or otherwise) matter of whatever kind or nature, and all tangible things from which information can be processed, transcribed, copied or retrieved, whether originals, copies or drafts (including, without limitation, nonidentical copies), however produced or reproduced. Thus, a "document" shall include, without limitation, any and all drafts; communications; correspondence; memoranda; records; reports; books; records, reports or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; videotapes; microfilms; electronic documents of any kind or character, including e-mails, spreadsheets, .pdf files, or word processing files; telephone voice mails; minutes, records, reports or summaries of meetings or conferences; records or reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including any information contained in a computer although not yet printed out.

6. The term "concerning" means any document that constitutes, contains, embodies, reflects, evidences, identifies, states, refers to, relates to deals with or is in any manner pertinent to the subject of the request.

7. The terms "and' as well as "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a request any documents that would otherwise not be brought within its scope.