Exhibit B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HUNTLEIGH USA CORPORATION,<br>Plaintiff,<br>- against -<br>THE UNITED STATES,<br>Defendant. | No. 03-2670C<br>Judge Margolis |

**PLAINTIFF'S FIRST SET**
**OF INTERROGATORIES TO DEFENDANT**

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, plaintiff Huntleigh USA Corporation ("Huntleigh"), by and through its attorneys, hereby requests that the defendant, the United States of America (the "government"), respond to the following interrogatories under oath within thirty days of the service hereof, in accordance with the definitions and instructions annexed hereto as Exhibit A.

**INTERROGATORIES**

INTERROGATORY NO. 1:

Identify the name, position and last known address for all persons who participated in the government's consideration, following passage of the Aviation and Transportation Security Act (the "Act"), to hire Huntleigh to perform passenger and baggage screening at domestic airports.

INTERROGATORY NO. 2:

Identify the name, position and last known address for all persons who were involved in evaluating or testing the adequacy of Huntleigh's and other private screening companies' performance as passenger and baggage screeners, from January 1, 1998 until the government's takeover.

INTERROGATORY NO. 3:

Identify the name, position and last known address for all persons who were involved in evaluating or testing the adequacy of the Transportation Security Administration's ("TSA's") performance as a passenger and baggage screener, from the inception of the TSA to the present.

INTERROGATORY NO. 4:

Identify the name and last known address for each Federal Security Director, or "FSD," who was (or is) responsible for supervising passenger and baggage screening operations at any of the Huntleigh Locations.

INTERROGATORY NO. 5:

Identify the name and last known address for each person who consulted with or otherwise assisted John Magaw, former Under Secretary of Transportation for Security, in preparing for his written or oral testimony before the United States Congress on January 23, 2002.

INTERROGATORY NO. 6:

Identify the name and last known address for each person who was involved in preparing the TSA's Report to Congress on Transportation Security, dated March 31, 2003.

INTERROGATORY NO. 7:

Identify the name and last known address for each person who was involved in preparing a report, dated April 16, 2004, which was authored by BearingPoint, Inc. and which is entitled "Private Screening Operations Performance Evaluation Report."

INTERROGATORY NO. 8:

Identify the name, last known address, position or positions held with the TSA, hiring date and departure date (if applicable) for each present or former TSA employee who once was employed by Huntleigh.

INTERROGATORY NO. 9:

For each of the years 2002 to the present, identify (a) the number of TSA screeners who were removed from their positions involuntarily; (b) the reasons therefor; (c) the attrition rate for TSA screeners, irrespective of the grounds for departure; and (d) documents that reflect the information requested in subsections (a)-(c).

INTERROGATORY NO. 10:

With respect to each of the Huntleigh Locations, identify, for each of the years 2002 to the present: (a) the number of passenger and baggage screeners and supervisors assigned to each such location; (b) the total number of standard time and

overtime hours worked by passenger and baggage screeners and supervisors at each such location; (c) the then-applicable wage and benefit rates for passenger and baggage screeners and supervisors at each such location; and (d) documents that reflect the information requested in subsections (a)-(c).

INTERROGATORY NO. 11:

With respect to each airport where there was a Huntleigh Location, identify, for each of the years 2002 to the present: (a) the number of individuals employed by the TSA to screen checked baggage through the use of Explosive Detection Systems (such as CTX or L-3 machines) or otherwise; (b) the total number of standard time and overtime hours worked by checked baggage screeners at each such airport; (c) the then-applicable wage and benefit rates for checked baggage screeners at each such airport; and (d) documents that reflect the information requested in subsections (a)-(c).

INTERROGATORY NO. 12:

For each of the years 1998 to 2002, describe every test that the government conducted to measure the ability of screeners from Huntleigh and other private companies to detect dangerous objects in baggage, cargo and/or on individuals by identifying, for each such test: (a) the government agency responsible for performing the test; (b) the test date; (c) the test location (e.g., airport, terminal, concourse, checkpoint, etc.); (d) the private screening company being tested; (e) the methods employed (e.g., x-ray, metal detector, physical search, etc.); (f) the objects used (e.g., fake weapons, knives, etc.); and (g) the results (e.g., success rate in detecting objects).

INTERROGATORY NO. 13:

For each of the years 2002 to the present, describe every test that the government conducted to measure the ability of TSA screeners to detect dangerous objects in baggage, cargo and/or on individuals by identifying, for each such test: (a) the government agency responsible for performing the test; (b) the test date; (c) the test location (e.g., airport, terminal, concourse, checkpoint, etc.); (d) the methods employed (e.g., x-ray, metal detector, physical search, etc.); (e) the objects used (e.g., fake weapons, knives, etc.); and (f) the results (e.g., success rate in detecting objects).

INTERROGATORY NO. 14:

Does the government contend (a) that prior to the Act's passage, Huntleigh's airport passenger and baggage screeners failed to adequately or appropriately protect airline passengers and, if so, (b) that this alleged failure served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor? If the answer to the foregoing Interrogatory is "yes," state each fact and identify each document upon which the government bases its contention.

INTERROGATORY NO. 15:

Does the government contend (a) that prior to the Act's passage, private screening companies other than Huntleigh failed to adequately or appropriately protect airline passengers and, if so, (b) that this alleged failure by others served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor? If the answer to the foregoing Interrogatory is "yes," state each fact and identify each document upon which the government bases its contention.

INTERROGATORY NO. 16:

Does the government contend (a) that Huntleigh's airport passenger and baggage screeners failed to adequately or appropriately perform their duties at Logan Airport's United Airlines terminal on September 11, 2001 and, if so, (b) that this alleged failure served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor? If the answer to the foregoing Interrogatory is "yes," please state each fact and identify each document upon which the government bases its contention.

INTERROGATORY NO. 17:

Identify all persons who were consulted or participated in preparing any response to any of the foregoing Interrogatories.

Dated: June 10, 2005
New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Jonathan J. Lerner /wjO

Jonathan J. Lerner (attorney of record)
Lauren E. Aguiar
William J. O'Brien
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Plaintiff

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. The term "document" is used herein in the broadest possible sense and means any written, graphic or other recorded (whether visually, electronically, magnetically or otherwise) matter of whatever kind or nature, and all tangible things from which information can be processed, transcribed, copied or retrieved, whether originals, copies or drafts (including, without limitation, nonidentical copies), however produced or reproduced. Thus, a "document" shall include, without limitation, any and all drafts; communications; correspondence; memoranda; records; reports; books; records, reports or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; videotapes; microfilms; electronic documents of any kind or character, including e-mails, spreadsheets, .pdf files, or word processing files; telephone voice mails; minutes, records, reports or summaries of meetings or conferences; records or reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including any information contained in a computer although not yet printed out.

2. The terms "and' as well as "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a request any documents that would otherwise not be brought within its scope.

3. The term "Huntleigh Locations" shall mean each and every airport terminal, concourse or checkpoint at which Huntleigh was operating on September 10, 2001.

4. The parties in this action are also currently involved in a matter pending before the Federal Aviation Administration Office of Dispute Resolution for Acquisition, entitled Contract Dispute of Huntleigh USA Corporation Under Contract DFTA-01-02-C-04025, Docket No. 04-TSA-008 (the "ODRA Proceeding"). The government's response to the Interrogatories propounded herein shall not be construed as discharging any disclosure obligations that the government might have in the ODRA Proceeding. Nor shall the discovery requests issued in this action limit Huntleigh's right to independently seek information responsive to its claims and defenses in the ODRA Proceeding.

5. Each Interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for the objection and shall answer to the extent the Interrogatory is not objectionable. The answers shall be signed by the person making them.

6. Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims, if the government objects to any of the foregoing Interrogatories, the reasons in support of each objection shall be stated with specificity. The objections shall be signed by counsel.

7. If any information covered by an Interrogatory is withheld by reason of a claim of privilege, work product or other ground: (i) identify each such document, communication or other item by date, preparer/author/speaker, addressees and recipients;

(ii) identify each person to whom a copy was furnished or to whom the advice was conveyed; (iii) state the general subject matter of the document or communication; and (iv) state the ground on which the claim or privilege is based. For each item of information withheld under a claim of attorney work product, also state whether the information was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based. If you claim a privilege regarding any information requested by an Interrogatory, you should nevertheless answer to the extent it calls for information as to which you do not claim a privilege.