Exhibit C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2670C |
| | ) | (Senior Judge Margolis) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSES TO PLAINTIFF'S
FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

The United States responds as follows, pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), to the document requests served by Huntleigh USA Corporation on June 10, 2005.

These responses are based upon information currently available and are subject to supplementation as appropriate. Consistent with the responses below, the Government will make responsive documents available for inspection and copying at a time and place, or at times and places, mutually convenient and reasonable for the parties.

GENERAL OBJECTIONS

1. Defendant objects to the requests and to the accompanying definitions and instructions to the extent they may purport to impose obligations beyond those imposed by the RCFC.

2. Defendant is the Executive Branch and cannot produce documents or things within the possession and control of the United States Congress or its agencies, including the Government Accountability Office ("GAO"). Accordingly, the United States

objects to Huntleigh's requests to the extent that they seek information and/or documents not in the possession, custody, or control of the Executive Branch.

3. If, and to the extent, responsive documents are located, but withheld, a privilege log will be provided within a reasonable time.

4. Defendant objects generally to Huntleigh's requests to the extent that they seek information not relevant to Huntleigh's claims in this litigation.

5. Defendant objects generally to the requests to the extent that they seek material that is readily accessible to Huntleigh in the public record via the United States Department of Homeland Security ("DHS"), Transportation Security Administration ("TSA"), and Office of Management and Budget ("OMB") websites (www.dhs.gov, www.tsa.gov, and www.whitehouse.gov/omb.gov, respectively), and to the extent that they are available in Huntleigh's own files. Responding to such requests would be unduly burdensome and would cause the Government to incur unnecessary expense. See RCFC 26(b)(2).

6. Defendant objects to each request that seeks documents "concerning" a certain subject, which Huntleigh defines to mean "any document that constitutes, contains, embodies, reflects, evidences, states, refers to, relates to, deals with, or is in any manner pertinent to the subject of the request." The

universe of potentially responsive documents to such requests would include, for example, almost every document that mentions aviation security in the possession, custody or control of TSA. Not all such documents are relevant, and responding fully to the requests as written would impose undue burden and expense on the Government. See RCFC 26(b)(2).

7. Defendant objects to the requests to the extent they seek documents or materials protected by the attorney-client privilege, the work-product doctrine, the deliberative process privilege, the law enforcement/investigatory files privilege, and/or federal statute, regulation or executive order, including but not limited to information that is protected under the Privacy Act, 5 U.S.C. § 552a (2000), that constitutes Sensitive Security Information ("SSI"), as defined by 49 C.F.R. Part 15 and 49 Part 1520, or is classified pursuant to E.O. 12958, as amended. Any responsive document withheld on these grounds will be described in a privilege log.

8. To the extent any responsive documents were provided to the Government with an expectation of confidentiality, including, but not limited to, proprietary or commercial information, production is subject to the entry of an appropriate protective order.

DOCUMENT REQUESTS

1. All documents identified by the government in its Initial Disclosures dated April 22, 2005.

Response:

Subject to the foregoing general objections, in particular, to general objections number 5 and 7, the United States will produce all responsive documents.

2. All documents referring or relating to or concerning the testimony of John Magaw, former Under Secretary of Transportation for Security, before the United States Congress on January 23, 2002, including, without limitation, (i) all copies of Mr. Magaw's prepared statement (including drafts thereof); and (ii) any correspondence, memoranda, communications (electronic or otherwise) or other documents relating thereto.

Response:

Subject to the foregoing general objections, in particular, to general objections number 2, 5, 6 and 7, the United States will produce all responsive documents.

3. All documents concerning the Transportation Security Administration's ("TSA's") Report to Congress on Transportation Security, dated March 31, 2003, including, without limitation, (i) drafts of the Report; and (ii) any correspondence memoranda, communications (electronic or otherwise) or other documents relating thereto.

Response:

We object to this request as overly broad and not reasonably calculated to lead to the discovery of relevant evidence. TSA's March 31, 2003 Report to Congress addresses a number of issues and concerns affecting TSA and transportation security that are not at issue in this case. Therefore, "all documents concerning" this Report would include any number of documents that are completely unrelated to Huntleigh's claims. However, subject to this objection, and to the foregoing general objections, in particular, to general objections number 2, 4, 5, 6 and 7, the United States will produce all responsive documents.

4. Any reports, publications, testimony, memoranda, correspondence or other documents in which the government, prior to September 11, 2001, informed private screening companies and/or the public that it might (i) assume responsibility for airport passenger and baggage screening or (ii) otherwise prevent private screening companies from continuing to operate their businesses.

Response:

Subject to the foregoing general objections, in particular, to general objections number 2, 5 and 7, the United States will produce all responsive documents.

5. All studies, reports, memoranda or other documents concerning the economic impact that the Act has imposed on

Huntleigh, any other private screening companies and/or the airport security industry in general.

Response:

Subject to the foregoing general objections, in particular general objection number 6, and after a reasonable search, will produce all responsive documents.

6. All documents concerning the value of Huntleigh's property, including, without limitation, its passenger and baggage screening contracts with airlines, its going concern value and/or its goodwill.

Response:

Subject to the foregoing general objections, in particular general objection number 6, and after a reasonable search, we know of no responsive documents.

7. The TSA budgets for each of the fiscal years 2002 to 2005 and the proposed TSA budget for fiscal year 2006, or those portions of the foregoing actual and proposed budgets that pertain to passenger and baggage screening.

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence. Subject to the specific objection above and the foregoing general objections, in particular, to general objections number 2, 4, 5 and 7, the United States makes responsive documents available by directing

Huntleigh to www.whitehouse.gov/omb.gov where the DHS and DOT budgets are publicly available. The TSA budget for 2002 is found within the DOT budget and the 2003-2005 budgets are found within the DHS budgets. The United States will produce the proposed DHS budget for fiscal year 2006.

8. Documents sufficient to identify the costs incurred and monies received by the TSA in connection with airport passenger and baggage screening, including, without limitation, documents concerning (i) the TSA's spending on wages, benefits, other labor costs, hiring, background checks, training, equipment and other matters; and (ii) the TSA's collection of fees from passengers and/or airline carriers.

Response:

We object to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. Subject to the specific objections above, and the foregoing general objections, in particular, to general objection numbers 2, 4, 5, 6 and 7, the United States will produce documents responsive to part (i) of the request. We direct Huntleigh's attention for part (ii) to 49 U.S.C. § 44940, which lays out the fee structure for the Aviation Security Infrastructure Fee ("ASIF") and passenger fees collected by TSA. ATSA requires that TSA impose uniform security service fees on passengers of domestic and foreign air carriers in air

transportation, foreign air transportation, and intrastate air transportation originating at airports in the United States.

9. All contracts or other agreements between the government and any private screening company for the provision of passenger and/or baggage screening at airports, including, without limitation, (i) any such documents, including all contracts, relating to Globe Aviation Services Corporation and all communications (internal and external) and documents relating thereto; and (ii) any such documents in which the government agreed to pay money to a private screening company as compensation for the government's takeover of passenger and baggage screening.

Response:

We object to this request as overly broad, especially as it is unlimited as to time period, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. We presume that the request calls for all interim contracts that the Government entered into with private screening companies after the passage of ATSA and prior to TSA's installation of its Federal workforce. TSA used a standard base letter contract for all interim contracts with the security companies, and therefore each such contract would be similar in content to the one that the Government entered into with Huntleigh. Subject to the specific objection above, and the

foregoing general objections, in particular general objections number 4, 5, and 7, and after a reasonable search, we know of no documents responsive to part (i) of this request other than the interim contracts TSA entered into with Globe and the 65-70 other security screening companies, which are not relevant for the reasons discussed above. After a reasonable search, we know of no documents responsive to part (ii).

10. All documents concerning the settlement of any post-September 11 claim involving the government and a private screening company, including, without limitation (i) all executed settlement agreements; (ii) documents reflecting the settlement amount, if any, for each resolved claim; and (iii) any documents in which the government agreed to pay money to a private screening company as compensation for the government's takeover of passenger and baggage screening.

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence, vague, and overly broad. Responding fully to this request as written would require the Government to provide documents not relevant to Huntleigh's claims or the issues in this litigation. The United States did enter into settlement agreements with certain security companies relating to disputes over payments in connection with their interim contracts with the Government, however, those settlements

have no relevance to this case. Subject to the specific objections above, and the foregoing general objections, in particular, general objections number 4, 6 and 7, and after a reasonable search, we know of no responsive documents that are relevant to the claims raised in this litigation.

11. All documents concerning the performance of consulting services by Huntleigh and/or its affiliates for the government on issues pertaining to passenger and baggage screening.

Response:

We object to this request upon the grounds that "affiliates" is undefined and vague, and the Government could not determine Huntleigh's affiliates (however defined) without undue burden and expense. See RCFC 26(b)(2). Subject to this objection, and the foregoing general objections, in particular, general objection numbers 5 and 6, we know of no documents responsive to this request, as limited to Huntleigh.

12. All documents concerning the government's assertion (as articulated in its motion to dismiss dated March 25, 2004), that its replacement of private screening companies was a valid and proper exercise of the government's police power, including, without limitation, documents supporting any assertion that Huntleigh and/or private screeners "fail[ed] to adequately protect the public."

Response:

Subject to the foregoing general objections, in particular, to general objections number 2, 5, 6 and 7, we will produce all responsive documents.

13. All documents concerning the government's consideration, following passage of the Aviation and Transportation Security Act (the "Act"), to hire Huntleigh to perform passenger and baggage screening at domestic airports, including, without limitation, documents concerning (i) the criteria used by the government in awarding such work; (ii) the reason or reasons why Huntleigh was awarded work at its then-existing locations; and (iii) the reason or reasons why Huntleigh was awarded work at new locations.

Response:

Subject to the foregoing general objections, in particular, to general objection numbers 6 and 7, the United States will produce all responsive documents.

14. All documents concerning the adequacy of Huntleigh's and other private screening companies' performance as passenger and baggage screeners from January 1, 1998 until the government's takeover, including, without limitation, (i) documents concerning compliance (or alleged non-compliance) with federal laws, regulations and guidelines; (ii) testing results or other information concerning the identification by screeners of

dangerous objects in baggage, cargo and/or on individuals; and (iii) documents concerning or reflecting any criticism, evaluation or analysis of Huntleigh's performance as a screener of passengers and baggage.

Response:

Subject to the foregoing general objections, in particular, to general objections number 2, 5, 6 and 7, the United States will produce all responsive documents.

15. All documents concerning the adequacy of TSA's performance as a passenger and baggage screener, including, without limitation, (i) documents concerning compliance (or alleged non-compliance) with federal laws, regulations and guidelines; (ii) testing results or other information concerning the identification by screeners of dangerous objects in baggage, cargo and/or on individuals (including the results of tests performed by TSA's Office of Internal Affairs and Program Review, the United States [Government] Accountability Office, and the Department of Homeland Security's Office of Inspector General, among others).

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence. The TSA's performance as a passenger and baggage screener is not relevant to any of the claims or issues in this litigation, as ATSA's

effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle v. Chevron U.S.A., 125 S. Ct. 2074, 2078 (May 23, 2005) (whether regulation "substantially advances" legitimate state interests not relevant to regulatory takings analysis). We further object to this request for the reasons in the foregoing general objections, in particular, general objections number 2, 4, 5, 6 and 7.

16. For each of the years 2002 to 2005, documents sufficient to identify (i) the number of former Huntleigh workers who were employed by the TSA as screeners, Federal Security Directors or supervisors; and (ii) the number of individuals formerly employed by other private screening companies who were employed by the TSA as screeners, Federal Security Directors or supervisors.

Response:

We object to this request as overly burdensome and not reasonably calculated to lead to the discovery of relevant evidence. The TSA does not track this information for its employees. The only conceivable method of gathering this information is by reviewing tens of thousands of background investigation forms currently stored at the National Archives and Records Center in Beltsville, Maryland, to identify the employees' former employers. These records are commingled with hundreds of thousands of applicant files, with nothing

distinguishing the background files from the applicant files. There is no reasonable or practical means for the United States to provide this information. Accordingly, responding to this request, even if possible, would impose undue burden and expense on the Government. See RCFC 26(b)(2). We further object on the basis of the foregoing general objections, in particular, general objections number 4, 5 and 7.

17. All documents concerning a report, dated April 16, 2004, which was prepared by BearingPoint, Inc. and entitled "Private Screening Operations Performance Evaluation Report," including, without limitation, (i) drafts of the Report; and (ii) any correspondence, memoranda or other documents relating thereto.

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence. The BearingPoint report is an evaluation of the performance of the five commercial airports that retained private screening personnel under TSA oversight after the Federalization of the Nation's screening workforce in 2002. The performance of the screening companies involved in the Pilot Project is not relevant to any of the claims or issues in this litigation, as ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle, 125 S. Ct. at 2078. We further

object to this request for the reasons in the foregoing general objections, in particular, general objections number 2, 4, 5, 6 and 7.

18. All documents concerning a certain report that was prepared by the Department of Homeland Security's Science and Technology Directorate concerning aviation security, and which was cited by author Eric Lipton in a New York Times article dated June 5, 2005, including, without limitation, (i) drafts of the Report; and (ii) any correspondence, memoranda or other documents relating thereto.

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence. The Report examines aviation security after Federalization of the Nation's screening workforce in 2002. The TSA's performance as a passenger and baggage screener is not relevant to any of the claims or issues in this litigation, as ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle, 125 S. Ct. at 2078. We further object to this request for the reasons in the foregoing general objections, in particular, general objections number 2, 4, 5, 6 and 7.

19. All documents concerning a certain "Passenger Screener Performance Study" that was completed by the TSA in or about July 2003, including, without limitation, documents addressing or

otherwise referring to any alleged deficiencies with passenger and baggage screening identified therein.

Response:

We object to this request as not reasonably calculated to lead to the discovery of relevant evidence. The Study examines aviation security after Federalization of the Nation's screening workforce in 2002. The TSA's performance as a passenger and baggage screener is not relevant to any of the claims or issues in this litigation, as ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle, 125 S. Ct. at 2078. We further object to this request for the reasons in the foregoing general objections, in particular, general objections number 2, 4, 5, 6 and 7.

20. To the extent not covered by Document Requests 17 to 19, all reports, studies and/or publications that have been prepared, made, given or issued by the government since September 11, 2001 concerning aviation security, including, without limitation, (i) all such documents prepared by the TSA, the Department of Homeland Security's Office of Inspector General, the United States [Government] Accountability Office, and/or the Department of Homeland Security's Office of Inspector General, among others; (ii) all such documents prepared by third party consultants to the government; and (iii) any internal drafts, memoranda or communications relating thereto.

Response:

We object to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. Since 2001, the Government has prepared countless documents that would fall under this request, addressing any number of issues and concerns affecting aviation security that are not at issue in this case. Therefore, a full response to this request would include any number of documents that are completely unrelated to Huntleigh's claims and would impose undue burden and expense on the Government. See RCFC 26(b)(2). In addition, we object to the extent this request seeks documents examining aviation security after Federalization of the Nation's screening workforce in 2002. That subject is not relevant to any of the claims or issues in this litigation, as ATSA's effectiveness in improving airline security is inapposite to the takings claim. See Lingle, 125 S. Ct. at 2078. Subject to this objection, and the foregoing general objections, in particular, to general objections number 2, 4, 5, 6 and 7, we will produce all responsive documents that relate to aviation security prior to the Federalization of the screening workforce in 2002.

21. All manuals, guidelines and other documents concerning the TSA's training of passenger and baggage screeners.

Response:

Subject to the foregoing general objections, in particular, to general objections number 4, 5, 6 and 7, we will produce all responsive documents.

22. Documents sufficient to identify all security equipment that the government has purchased since September 11, 2001 to enhance aviation security.

Response:

We object upon the ground that this request is not reasonably calculated to lead to the discovery of relevant evidence. Subject to this objection, and the foregoing general objections, in particular, to general objections number 4, 5 and 7, we will produce all responsive documents.

PETER D. KEISLER
Assistant Attorney General

David M. Cohen / Bh [signature]
DAVID M. COHEN
Director

OF COUNSEL:

AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

July 14, 2005

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 14th day of July 2005, I caused the attached discovery responses to be served by overnight delivery (FedEx) and electronic courtesy copy upon:

Jonathan J. Lerner
Skadden, Arps, Slate Meagher& Flom
Four Times Square
New York, NY 10036-6522

Fax: (212) 735-2000