Exhibit D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HUNTLEIGH USA CORPORATION, )
)
Plaintiff, )
)
v. ) No. 03-2670C
) (Senior Judge Margolis)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

The United States responds as follows, pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), to the interrogatories served by Huntleigh USA Corporation on June 10, 2005. These responses are based upon information currently available and are subject to supplementation as appropriate.

GENERAL OBJECTIONS

1. Defendant objects to the definitions and instructions accompanying Huntleigh's interrogatories to the extent they may purport to impose obligations beyond those imposed by the RCFC.

2. Defendant is the Executive Branch and cannot speak on behalf of the United States Congress or its agencies, including the Government Accountability Office ("GAO"). Accordingly, We object to the interrogatories to the extent that they seek information not in the purview of the Executive Branch.

3. We object to the interrogatories to the extent they seek information not relevant to Huntleigh's claims in this litigation.

4. We object to the interrogatories to the extent they seek information that is readily accessible to Huntleigh in the public record via the United States Department of Homeland Security ("DHS"), Transportation Security Administration ("TSA"), and Office of Management and Budget ("OMB") websites (www.dhs.gov, www.tsa.gov, and www.whitehouse.gov/omb.gov, respectively), and to the extent the information is available in Huntleigh's own files. Responding to such interrogatories would be unduly burdensome and would cause the Government to incur unnecessary expense.

5. We object to the interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, the deliberative process privilege, the law enforcement/investigatory files privilege, and/or federal statute, regulation or executive order, including but not limited to information that is protected by the Privacy Act, 5 U.S.C. § 552a, constitutes Sensitive Security Information ("SSI"), as defined by 49 C.F.R. Parts 15 and 1520, and/or is classified pursuant to E.O. 12958, as amended.

6. To the extent these or any future interrogatories may seek information provided to the Government with an expectation of confidentiality, including, but not limited to, proprietary or commercial information, disclosure of the information is subject to the entry of an appropriate protective order.

RESPONSES TO INTERROGATORIES

Interrogatory No. 1:

Identify the name, position and last known address for all persons who participated in the government's consideration, following passage of the Aviation and Transportation Security Act (the "Act"), to hire Huntleigh to perform passenger and baggage screening at domestic airports.

Response:

We object to the phrase "persons who participated in the government's consideration" as vague and overly broad, as it could encompass many people who were only minimally or tangentially involved and/or who were involved in a ministerial or non-substantive capacity. Subject to this objection, and subject to the foregoing general objections, and in particular, to general objection number 5, we respond as follows. Following the passage of the Act, a general decision was made to keep the current security companies in place on an interim basis until the Federal work force began security screening at our Nation's airports. This was accomplished through award of new contracts with the Federal Government. Therefore, there was not a specific decision, per se, to hire Huntleigh to perform passenger and baggage screening at domestic airports. Rather, there was a determination that the status quo should be maintained until the Federal workforce was "rolled out."

At the same time, there was a decision by the Government not to enter into contracts for passenger or baggage screening services with Argenbright Security, Inc. ("Argenbright") following Argenbright's debarment as a Federal contractor by the General Services Administration ("GSA"). See Federal Acquisition Regulation ("FAR") 9.406. The debarment prohibited the Government from awarding a contract to Argenbright for passenger or baggage screening services absent a compelling reason justifying the Government's continued business dealings with Argenbright. As an alternative, the Government opted to allow Argenbright to continue to perform screening services on a temporary basis under the pre-existing airline contracts until the Argenbright locations effectively could transition to either Federal screeners or other private screening companies. Huntleigh was awarded the contracts at some of the Argenbright locations because it expressed an interest and had the capacity to handle some additional locations.

The United States believes that the following people "participated in the government's consideration" of the decision to maintain the current Federal screening companies, other than Argenbright, at their airports on an interim basis following the passage of ATSA:

1. Anthony L. Washington, then Deputy Chief Counsel for Procurement, Federal Aviation Administration ("FAA") / Current position: Deputy Chief Counsel for Procurement, Office of Chief Counsel, TSA, Arlington,

Virginia 22202;

2. Susan Corbin, then Contracting Officer, FAA / Current position: Manager Facilities and Technology Services Branch, Office of Acquisitions, FAA, Washington, DC;

3. Patricia McNall, then and still Assistant Chief Counsel for Procurement, FAA, Washington, DC; and

4. David Leitch, then Chief Counsel, FAA / Current position: General Counsel, Ford Motor Company, Detroit, Michigan.

Interrogatory No. 2:

Identify the name, position and last known address for all persons who were involved in evaluating or testing the adequacy of Huntleigh's and other private screening companies' performance as passenger and baggage screeners, from January 1, 1998 until the government's takeover.

Response:

We object to the phrase "persons who were involved in evaluating or testing" as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. As phrased, this request potentially encompasses hundreds of inspectors, special agents, evaluators and administrative personnel, and would include many people who were only minimally or tangentially involved and/or who were involved in a ministerial or non-substantive capacity. As such, responding fully would be burdensome and would call for information not reasonably calculated to lead to the discovery of relevant evidence. Subject to these objections, and the foregoing general objections, in particular, to general objections number 2, 4 and 5, we believe that the following people "were involved in evaluating or testing" the adequacy of airline security:

1. Christine Patterson, then Office of Civil Aviation Security Specialist & Contracting Officer's Technical Representative, FAA / Current position: Transportation Security Specialist, Office of

Security Technology, TSA, Arlington, VA 22202;

2. Fran Lozito, then Manager, Office of Civil Aviation Security Operations, FAA / Current position: Chief of Staff, Office of Security Technology, TSA, Arlington, VA 22202.

Interrogatory No. 3:

Identify the name, position and last known address for all persons who were involved in evaluating or testing the adequacy of the Transportation Security Administration's ("TSA's") performance as a passenger and baggage screener, from the inception of TSA to the present.

Response:

We object to this interrogatory as overly broad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence, because it requests information not related to Huntleigh's claims in this case. The TSA's performance as a passenger and baggage screener is not relevant to any of the claims or issues in this litigation, because ATSA's effectiveness in improving airline security is inapposite to the court's takings analysis. See Lingle v. Chevron U.S.A., 125 S. Ct. 2074, 2078 (May 23, 2005) (whether regulation "substantially advances" legitimate state interests not relevant to regulatory takings analysis). We further object upon the basis of the foregoing general objections, in particular, numbers 2, 3, 4 and 5.

Interrogatory No. 4:

Identify the name and last known address for each Federal Security Director, or "FSD," who was (or is) responsible for supervising passenger and baggage screening operations at any of the Huntleigh locations.

Response:

We object to this interrogatory as vague, overly broad, and not reasonably calculated to lead to the discovery of relevant evidence. Subject to these objections, and subject to the foregoing general objections, in particular, numbers 3, 4 and 5, we respond as follows. The interrogatory does not specify a time period; however, there were no FSDs at any airport locations until some time in the late spring or summer of 2002, when FSDs were assigned to airport locations as the Federal screener work force was rolled out at various airports in anticipation of the November 2002 deadline to have a Federal workforce in place - well after the passage of ATSA. The TSA's performance as a passenger and baggage screener is not relevant to any of the claims or issues in this litigation, as ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle, 125 S. Ct. at 2078. Therefore, the identities of the FSDs are not relevant to any of Huntleigh's claims or the issues in this litigation.

Interrogatory No. 5:

Identify the name and last known address for each person who consulted with or otherwise assisted John Magaw, former Under Secretary of Transportation for Security, in preparing for his written or oral testimony before the United States Congress on January 23, 2002.

Response:

We object to the phrase "each person who consulted with or otherwise assisted" as vague, overly broad, and potentially unduly burdensome, because it could encompass many people who were only minimally or tangentially involved and/or who were involved in a ministerial or non-substantive capacity. Subject to these objections, and subject to the foregoing general objections, in particular, numbers 3 and 5, we believe the following people "consulted with or otherwise assisted" Mr. Magaw for the stated purpose:

1. Sametta Klintob, Legislative Affairs, DOT / Current position: Delta Airlines, Washington, DC; and

2. Justin Oberman, Assistant Administrator for Secure Flight and Registered Traveler, TSA, Arlington, VA 22202.

Interrogatory No. 6:

Identify the name and last known address for each person who was involved in preparing the TSA's Report to Congress on Transportation Security, dated March 31, 2003.

Response:

We object to this interrogatory as overly broad and not reasonably calculated to lead to the discovery of relevant evidence. TSA's March 31, 2003 Report to Congress addresses a number of issues and concerns affecting TSA and transportation security that are not at issue in this case. Therefore, not all persons "involved" in preparing the Report would have information that is in any way related to Huntleigh's claims. We further object to the phrase "each person who was involved" as vague and overly broad, as it could encompass many people who were only minimally or tangentially involved and/or who were involved in a ministerial or non-substantive capacity. Subject to these objections, and subject to the foregoing general objections, in particular, to general objections number 3 and 5, we believe the following people were involved in the preparation of those parts of the Report that arguably could be relevant to this case:

1. Patrick Kearney, then Executive Director, Office of External and Industry Affairs, Office of Transportation Security Policy, TSA / Current position: Executive Director, Office of Legislative, Economic and Regulatory Analysis, TSA, Arlington, VA 22202;

2. Jane Petkovsky, then and still Attorney-Advisor, Office of Chief Counsel, TSA, Arlington, VA 22202;

3. Courtney Tucker, then Senior Policy Analyst, Office of Transportation Security Analysis, TSA / Current position: Senior Policy Analyst, Office of Transportation Security Policy, TSA, Arlington, VA 22202.

Interrogatory No. 8:

Identify the name, last known address, position or positions held with the TSA, hiring date and departure date (if applicable) for each present or former TSA employee who once was employed by Huntleigh.

Response:

We object to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. The TSA does not track this information for its employees and has no reasonable or practical means to provide this information. The only conceivable method of gathering this information for former employees is by reviewing tens of thousands of background investigation forms currently stored at the National Archives and Records Center in Beltsville, Maryland, to identify the employees' former employers. Those records are commingled with hundreds of thousands of applicant files, with nothing distinguishing the background files from the applicant files. Accordingly, responding to this interrogatory, even if possible, would impose undue burden and expense on the Government. See RCFC 26(b)(2). We further object upon the basis of the foregoing general objections, in particular, number 5.

Interrogatory No. 8:

Identify the name, last known address, position or positions held with the TSA, hiring date and departure date (if applicable) for each present or former TSA employee who once was employed by Huntleigh.

Response:

We object to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. The TSA does not track this information for its employees and has no reasonable or practical means to provide this information. The only conceivable method of gathering this information is by reviewing tens of thousands of background investigation forms currently stored at the National Archives and Records Center in Beltsville, Maryland, to identify the employees' former employers. Those records are commingled with hundreds of thousands of applicant files, with nothing distinguishing the background files from the applicant files. Accordingly, responding to this interrogatory, even if possible, would impose undue burden and expense on the Government. See RCFC 26(b)(2). We further object upon the basis of the foregoing general objections, in particular, number 5.

Interrogatory No. 9:

For each of the years 2002 to the present, identify (a) the number of TSA screeners who were removed from their positions involuntarily; (b) the reasons therefor; (c) the attrition rate for TSA screeners, irrespective of the grounds for departure; and (d) documents that reflect the information requested in subsections (a)-(c).

Response:

We object to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. The performance and attrition rate of the TSA screeners are not relevant to any of the claims or issues in this litigation, because ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. See Lingle, 125 S. Ct. at 2078. We further object upon the basis of the foregoing general objections, in particular, numbers 3 and 5.

Interrogatory No. 10:

With respect to each of the Huntleigh Locations, identify, for each of the years 2002 to the present: (a) the number of passenger and baggage screeners and supervisors assigned to each such location; (b) the total number of standard time and overtime hours worked by passenger and baggage screeners and supervisors at each such location; (c) the then-applicable wage and benefit rates for passenger and baggage screeners and supervisors at each such location; and (d) documents that reflect the information requested in subsections (a)-(c).

Response:

We object to the phrase "Huntleigh Locations" as inadequately defined and vague; and we object to the interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. Subject to these objections, and to the foregoing general objections, in particular, numbers 3, 4 and 5, we respond as follows. All TSA screeners are trained to screen both air traffic passengers and checked baggage, and TSA does not distinguish between passenger and baggage screeners for purpose of wage rates. TSA screeners are required to be competent in both passenger and checked baggage screening and generally rotate between all phases of screening. The Government is in the process of identifying the number of screeners at each of the

"Huntleigh Location" airports, including hours worked and general wage rates. We will supplement this response as we receive additional information.

Interrogatory No. 11:

With respect to each airport where there was a Huntleigh Location, identify, for each of the years 2002 to the present: (a) the number of individuals employed by the TSA to screen checked baggage through the use of Explosive Detection Systems (such as CTX or L-3 machines) or otherwise; (b) the total number of standard hours and overtime hours worked by checked baggage screeners at each such airport; (c) the then-applicable wage and benefit rates for checked baggage screeners at each such airport; and (d) documents that reflect the information requested in subsections (a)-(c).

Response:

We object to this interrogatory as overly broad and unduly burdensome. Subject to these objections, and to the foregoing general objections, in particular, numbers 3, 4 and 5, we respond that because TSA does not distinguish between passenger and baggage screeners, and all screeners are trained to perform both functions, see our response to interrogatory number 10 above.

Interrogatory No. 12:

For each of the years 1998 to 2002, describe every test that the government conducted to measure the ability of screeners from Huntleigh and other private companies to detect dangerous objects in baggage, cargo and/or on individuals by identifying, for each such test: (a) the government agency responsible for performing the test; (b) the test date; (c) the test location (e.g., airport, terminal, concourse, checkpoint, etc.); (d) the private screening company being tested; (e) the methods employed (e.g., x-ray, metal detector, physical search, etc.); (f) the objects used (e.g., fake weapons, knives, etc.); and (g) the results (e.g., success rate in detecting objects).

Response:

We object to this interrogatory as overly broad and unduly burdensome, and also to the extent that it may call for classified information and/or Sensitive Security Information. Subject to these objections, and the foregoing general objections, in particular, numbers 2, 4 and 5, we respond that, during this time period, the FAA and DOT's Inspector General's office conducted regular tests of passenger and baggage screening. The FAA had two teams of testers: Special Agents and the Red Team.

FAA Special Agents conducted regular inspections of screening checkpoints, which tests fell into three primary

categories: (a) record review; (b) screener performance testing; and (c) observation. First, Special Agents regularly reviewed records maintained by the screening companies, acting on behalf of the air carriers, including training records, equipment calibration logs, background checks, equipment radiation surveys, equipment operational testing logs, and screener evaluations, for compliance with Federal Aviation Regulation Part 108 and the Air Carrier Standard Security Program. Second, they tested screener performance by secreting a weapon (firearm, improvised explosive device, etc.) either on an inspector's person or in his/her carry-on bag/briefcase/purse and processing through the checkpoint, as would a typical passenger, to determine if the screener would allow the agent with the weapon to enter the sterile area. They also would test the exit lanes to see if screeners monitoring the lanes would allow a person to enter the sterile area from the public area without being properly screened. Third, Special Agents observed checkpoint operations to ensure that screeners were screening properly in accordance with Federal Aviation Regulation Part 108 and the Air Carrier Standard Security Program.

The FAA Red Team also conducted regular covert inspections of screening checkpoints by secreting prohibited items on an inspector's person or in his/her carry-on baggage and processing through the checkpoint, as would a typical passenger. We are

gathering more information on the DOT Inspector General testing program and will supplement this response as appropriate.

<u>Interrogatory No. 13:</u>

For each of the years 2002 to the present, describe every test that the government conducted to measure the ability of TSA screeners to detect dangerous objects in baggage, cargo and/or on individuals by identifying, for each such test: (a) the government agency responsible for performing the test; (b) the test date; (c) the test location (e.g., airport, terminal, concourse, checkpoint, etc.); (d) the private screening company being tested; (e) the methods employed (e.g., x-ray, metal detector, physical search, etc.); (f) the objects used (e.g., fake weapons, knives, etc.); and (g) the results (e.g., success rate in detecting objects).

<u>Response:</u>

We object to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence relevant to Huntleigh's claims in this case. The performance of TSA screeners is not relevant to any of the claims or issues in this litigation, because ATSA's effectiveness in improving airline security is inapposite to the takings analysis before the Court. <u>See</u> <u>Lingle</u>, 125 S. Ct. at 2078. We further objects upon the basis of the foregoing general objections, in particular, numbers 2, 3, 4 and 5.

Interrogatory No. 14:

Does the government contend (a) that prior to the Act's passage, Huntleigh's airport passenger and baggage screeners failed to adequately or appropriately protect airline passengers and, if so, (b) that this alleged failure served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefore? If the answer to the foregoing Interrogatory is "yes," state each fact and identify each document upon which the government bases its contention.

Response:

We object to this interrogatory upon the basis of the foregoing general objections, in particular, numbers 2, 4 and 5. As stated in our motion to dismiss, and as reflected in ATSA's legislative history, Congress, in passing the Aviation and Transportation Security Act in November 2001, found that the existing system of having airlines provide screening services through contracts with private screening companies provided inadequate protection to the public from terrorist attacks. This congressional finding is independently supported by reports of the FAA Red Teams and Special Agents, and by GAO reports. To the extent that this contention interrogatory draws a distinction between Huntleigh and other private screening companies, Congress did not make such a distinction. At the same time, because "the

Takings Clause presupposes that the government has acted in pursuit of a valid public purpose," Lingle, 125 S. Ct. at 2084, we have no obligation to present any evidence at trial to "justif[y]" the passage of ATSA, as subsection (b) of this interrogatory might imply.

Interrogatory No. 15:

Does the government contend (a) that prior to the Act's passage, private screening companies other than Huntleigh failed to adequately or appropriately protect airline passengers and, if so, (b) that this alleged failure served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor? If the answer to the foregoing Interrogatory is "yes," state each fact and identify each document upon which the government bases its contention.

Response:

See our response to the preceding interrogatory.

Interrogatory No. 16:

Does the government contend (a) that Huntleigh's airport passenger and baggage screeners failed to adequately or appropriately perform their duties at Logan Airport's United Airlines terminal on September 11, 2001 and, if so, (b) that this alleged failure served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor? If the answer to the foregoing Interrogatory is "yes," state each fact and identify each document upon which the government bases its contention.

Response:

See our response to interrogatory number 14.

Interrogatory No. 17:

Identify all persons who were consulted or participated in preparing any response to any of the foregoing Interrogatories.

Response:

We object to the phrase "persons who were consulted or participated in preparing" as vague, overly broad, and unduly burdensome, as it could include people who were only minimally or tangentially involved and/or who were involved in a ministerial or non-substantive capacity. Subject to this objection, and subject to the foregoing general objections, in particular, number 5, we identify the following, most of whom are identified in our prior responses: John Magaw, Christine Patterson, Rene McCrae, Christian Jordan, Justin Oberman, Ralph Basham, Steven McHale, Sametta Klinetob, Betty Davis, Ashley Cannatti, Jane Petkofsky, John Moran, Susan Corbin, Andrew Anderson, Geri Lincoln, Larry Parker, Jim Swanson, Tom Hurlihy, Kent Olson, Peg Holleran, Yani Collins, Juergen Tooren, Patrick Kearney, Mardi Thompson, Courtney Tucker, Chris Larrick, Anthony Washington, Bing Yee, and Government counsel assigned to this matter.

PETER D. KEISLER
Assistant Attorney General

David M. Cohen /BAS
DAVID M. COHEN
Director

OF COUNSEL:

AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

July 15, 2005

VERIFICATION

I hereby certify under penalty of perjury that the information provided in the accompanying Responses of the United States to Plaintiff's First Set of Interrogatories are accurate and correct, to the best of my knowledge and belief.

ANTHONY L. WASHINGTON
Deputy Chief Counsel
Transportation Security Administration
Department of Homeland Security

Date July 14, 2005

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 15th day of July 2005, I caused the attached responses to interrogatories to be served by overnight delivery (FedEx) upon:

Jonathan J. Lerner
Skadden, Arps, Slate Meagher& Flom
Four Times Square
New York, NY 10036-6522

Fax: (212) 735-2000