No. 03-2670C
(Senior Judge Margolis)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HUNTLEIGH USA CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

September 16, 2005

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

THE GOVERNMENT'S OBJECTIONS ARE VALID AND ITS PACE OF PRODUCTION IS REASONABLE . . . . . . . . . . . . . . . . . . . . . 5

I. Government Compromises: Document Requests No. 9, 10, and 16 . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Document Request No. 9 . . . . . . . . . . . . . . . 5

B. Document Request No. 10 . . . . . . . . . . . . . . 8

C. Document Request No. 16; Interrogatory No. 8 . . 8

II. Document Requests No. 15, 18, 19; Interrogatories No. 3, 13 . . . . . . . . . . . . . . . . . . . . . . . 11

III. Other Interrogatories . . . . . . . . . . . . . . . . . 12

A. Interrogatory No. 4 . . . . . . . . . . . . . . . 12

B. Interrogatory No. 9 . . . . . . . . . . . . . . . 13

C. Interrogatories No. 14 and 16 . . . . . . . . . 13

IV. Pace Of Document Production . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES


Armstrong v. United States,
364 U.S. 40 (1960) . . . . . . . . . . . . . . . . . . . . . 4

Huntleigh USA Corp. v. United States,
63 Fed. Cl. 440 (2005) . . . . . . . . . . . . . . . . . . . 2

Lingle v. Chevron U.S.A. Inc.,
125 S. Ct. 2074 (2005) . . . . . . . . . . . . . . . . . 3, 11

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . 4

Maritrans Inc. v. United States,
342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . 4, 15

Penn Cent. Transp. Co. v. New York City,
438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . 3

Wyatt v. United States,
271 F.3d 1090 (Fed. Cir. 2001) . . . . . . . . . . . . . . . 4


## REGULATION


14 C.F.R. § 17.3(g) . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2670C |
| | ) | (Senior Judge Margolis) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Rule 7.2(a) of the Court's Rules ("RCFC"), defendant, the United States, respectfully opposes the August 30, 2005 motion of plaintiff, Huntleigh USA Corporation, to compel additional responses to six requests for production of documents and six interrogatories, and for a "date certain" for the Government to complete its document production.

PRELIMINARY STATEMENT

The Government naturally disagrees with Huntleigh as to which party labors under "a fundamental misperception of what this case is about." Pl. Br. 3. Huntleigh's discovery requests are objectionable, among other reasons, because the information sought is irrelevant to the resolution of Huntleigh's claims or our defenses. See JPSR 2 (April 8, 2005). It is therefore useful to review the substance of the case, before turning to the discovery issues raised by plaintiff's motion.

Perhaps Huntleigh's most fundamental and important mistake is its continued insistence that the Government must rely at trial upon evidence to prove either that Congress "was

entitled to legislate private screening companies out of existence without compensation because they had failed adequately to protect the public," id. at 10, or that "Huntleigh and other private screening companies . . . presented a threat to [the] flying public such that their businesses could be confiscated without compensation." Id. at 13. Not only have we never made those specific arguments, we have said that the adequacy of private screening should not be addressed as a factual matter at trial. See, e.g., Def. Reply for Mot. Dismiss 41. Indeed, had it taken the position that the shortcomings of the private screening system involved material facts, the Government would not have filed a motion to dismiss the complaint.

It is a simple historical fact, which we do not understand Huntleigh to deny, that Congress decided in the course of enacting the Aviation and Transportation Security Act of 2001 ("ATSA") that national security interests required the Federal Government to relieve the airlines of the obligation to provide passenger and baggage screening and, instead, to undertake those tasks itself. That Congress made that determination is a given that cannot be rebutted or disproved. Furthermore, this Court has recognized that "Congress acted for a public purpose in enacting [ATSA]," Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 449 (2005), and, after the Court so held, the Supreme Court clarified that the Government need not prove that a statute

that is alleged to effect a taking "substantially advances" its public purpose. Lingle v. Chevron U.S.A. Inc., 125 S. Ct. 2074, 2087 (2005).

The conclusive presumption under Lingle that ATSA advances the public interest eliminates any possible grounds for Huntleigh to "negate" or disprove at trial Congress' judgment that a Government security agency will better protect air safety than did private screeners. Pl. Br. 11. It follows that no purpose would be served by attempting to determine whether screening by the Government compares favorably with the screening formerly provided by the private sector, or whether Congress correctly perceived that private screening companies experienced high employee turnover. See id. at 13.

This Court, in the course of concluding, in its January 2005 decision, that factual questions may exist with respect to the Penn Central "character of the Governmental action" factor,[1] observed that "Huntleigh allegedly is a company that carried out its screening duties in compliance with federal law." 63 Fed. Cl. at 449. That is true – and nowhere in the Government's briefs or anywhere else have we suggested that Congress believed Huntleigh had violated Federal law. Nor, as Huntleigh appears to concede, have we ever suggested that Huntleigh's corporate

[1] See Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978).

activity constituted a common law nuisance. See Pl. Br. 8-9 n.3.[2] Huntleigh raised these issues by arguing that its compliance with law is material to the "character" of ATSA. It is not. Rather, the text and legislative history of ATSA alone are sufficient to demonstrate that Congress acted to protect the public health, welfare, and safety.

Assuming, without conceding, that any triable, factual issues remain with respect to whether ATSA exhibits the "character" of a taking, those issues must relate to whether the statute imposed upon Huntleigh a burden "which, in all fairness, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960), quoted in American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004). The latter is fundamentally or exclusively a question of law, e.g., Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), and, in addressing it, the Court "will not reweigh the evidence Congress considered in making its determination" as to how to improve public safety. Maritrans Inc. v. United States, 342 F.3d 1344, 1356-57 (Fed. Cir. 2003). It would be especially inappropriate for the Court to reweigh

[2] Nuisance law, a property concept, is typically considered only in connection with alleged regulatory takings of real property. E.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029-31 (1992).

Congress' judgments post hoc, by undertaking a comparison of the pre-ATSA and post-ATSA screening regimes, as Huntleigh desires.

With the foregoing background, the flaws in Huntleigh's approach to discovery in this case are readily identified.

## THE GOVERNMENT'S OBJECTIONS ARE VALID AND ITS PACE OF PRODUCTION IS REASONABLE

### I. Government Compromises: Document Requests No. 9, 10, and 16

#### A. Document Request No. 9

Huntleigh's motion appears to merge plaintiff's document requests number 9 and 10 and to mischaracterize the Government's distinct objections to each request by rolling several objections into one, said to be based "on relevance grounds." Pl. Br. 6. We address requests number 9 and 10 separately.

Document request number 9 generally seeks "contracts and agreements" between the Government and any private screening company for the provision of passenger and baggage screening, including (i) any such documents pertaining to Globe Aviation Security Services Corporation; and (ii) any such documents where the Government agreed to pay money to a private screening company as compensation for the Government's federalization of passenger and baggage screening.

First, we properly noted this request is vague and unduly burdensome because it is unlimited as to time. The only arguably relevant time is the post-ATSA, pre-Federalization period. Unless narrowed, this request would require the Government to

search for records of contracts between the Government and any private screening companies at any time, a monumental task. Moreover, Huntleigh cannot demonstrate that even the private screening contracts that were entered into following the passage of ATSA might lead to the discovery of admissible evidence.

Huntleigh asserts that it is entitled to review "these agreements and communications" to determine whether

> (i) the Government acknowledged - either explicitly or implicitly - the right of any private screening company to receive compensation for the compensation of business, (ii) if any of the terms in such agreements may be argued to constitute payment for just compensation, or (iii) if the Government acknowledges in these documents, either in words or substance, that it had assumed or was assuming contracts between private companies and the airlines.

Pl. Br. 6-7. As noted in our response to request number 9, however, the contracts executed with private screening companies between February 2002 and November 2002, when the Federalization process was completed, consist essentially of form letters with very little variation from one another, or from the contract that TSA entered into with Huntleigh itself. We further explained that these form contracts do not contain the information that Huntleigh says it seeks.

Nevertheless, in the interest of minimizing disputes, the Government will make the 47 boxes containing the contracts and their supporting documents available, subject to any privilege

objections, upon mutually convenient terms. These materials will include the Globe Aviation Services contract referenced in Huntleigh's document request.

Huntleigh does not explain, however, why, in addition to the Globe contract itself, it specifically seeks communications and other documents "relating to" the Globe contract. We note that Huntleigh is currently pursuing a definitization claim against the Government before the Office of Dispute Resolution for Acquisitions ("ODRA"), and that Globe pursued the same remedy, albeit unsuccessfully. The Government, therefore, maintains its relevance objection regarding all communications and documents pertaining to Globe's definitization claim.

Finally, we reiterate that the Government possesses no documents to produce in response to subpart 9(ii), because no documents exist "in which the government agreed to pay money to a private screening company as compensation for the Government's take over of passenger and baggage screening." When Huntleigh reviews the 47 boxes containing the approximately 70 screening contracts, it can confirm for itself that the Government has never paid or agreed to pay compensation to a private screening company for the Federalization of passenger and baggage screening.

B. Document Request No. 10

Document request number 10, as posed, seeks documents concerning "the settlement of any post-September 11 claim involving the Government and a private screening company . . . ." (emphasis added). First, this request is vague because the term "claim" in undefined. Moreover, in its motion, Huntleigh seems to broaden document request number 10 to include "disputes." Pl. Br. 6. We presume this means "disputes" within the meaning of 14 C.F.R. § 17.3(g).

Only three such disputes arose from the 70 interim contracts. They involved Globe, Huntleigh, and Animas Ground Services, Inc. Each dispute came before the ODRA and none involved a claim for compensation deriving from the passage of ATSA. The Government did not settle with any of these parties. Therefore, Huntleigh's arguments notwithstanding, we have nothing to produce in response to document request number 10, because no such documents exist.

C. Document Request No. 16; Interrogatory No. 8

Huntleigh's document request number 16 requests documents sufficient to identify (i) the number of former Huntleigh workers who were employed by the TSA as screeners, Federal Security Directors ("FSDs"), or supervisors; and (ii) the number of individuals formerly employed by other private screening companies who were employed in those positions. Huntleigh's

interrogatory number 8 specifically asks for the names of all TSA employees in category i above.

We properly objected to these requests as not reasonably calculated to lead to the discovery of relevant and admissible evidence. RCFC 26(b)(1). Huntleigh argues that this information is necessary to rebut the Government's supposed argument that Huntleigh failed to adequately protect the flying public. However, as discussed above, Huntleigh misrepresents or misconstrues the Government's position and, therefore, this information is not relevant to the case.

Notwithstanding the valid relevance objection, we served a supplemental response to interrogatory number 8 on September 7, 2005, offering that, if Huntleigh will mitigate our objections by supplying names - and we now must amend this to include Social Security numbers - of its former employees, we will cross-reference that information with the Government's personnel records to determine whether those people were hired by TSA. This is a reasonable compromise. Huntleigh can expect to receive within a reasonable time the available information regarding the former employees for whom it supplies the above information. However, Huntleigh has not responded.

To require the Government to search independently for the information would be unreasonably burdensome. There are two places where information regarding the former employers of TSA's

past and current employees might be found - in their background investigation files and their Official Personnel Files ("OPFs"), which generally include resumes. The Government required all of TSA's approximately 50,000 current employees, and thousands of former employees, to complete background investigations. While the names of the employees' former employers are doubtless included on the background investigation form, the Government did not "track" or create a database of the former employers of TSA's employees. Altogether, the Government would need to review more than 55,000 individual files.

The Office of Personnel Management ("OPM") performed the background investigations. OPM has archived the files and does not maintain a database of former employers of applicants or employees. The OPF files of current employees are maintained alphabetically by TSA's human resources contractor, Accenture, but Accenture has not captured the information that Huntleigh seeks in any database. The OPFs for employees are either at the National Personnel Records Center in St. Louis, Missouri, or are temporarily housed at the Washington National Records Center in Suitland, Maryland, awaiting shipment to St. Louis.

The only way for the Government to identify which of its current and former employees once worked for Huntleigh would be to manually search the thousands upon thousands of files at the various locations where the materials are archived. This task

could take weeks, if not months, imposing tremendous burden and expense upon the Government, with no relevance to the case.

II. Document Requests No. 15, 18, 19; Interrogatories No. 3, 13

"These [three] requests and [two] interrogatories seek information concerning the TSA's performance as a passenger and baggage screener." Pl. Br. 7. Although the Government agrees with Huntleigh at the level of generalities as to the scope and purposes of civil discovery, see id. at 5, we properly objected to all of these requests because they are not reasonably calculated to locate admissible evidence. RCFC 26(b)(1).

Huntleigh asserts in its motion that it wishes to investigate TSA's "performance" not in order "to revisit whether, viewed ex ante, Congress' decision to federalize . . . screening was . . . appropriate . . .," but in order to attempt to disprove the proposition that private screening companies "failed adequately to protect airline passengers prior to September 11 and therefore posed an ongoing danger to the public." Pl. Br. 8.

That is a distinction without a difference, however - since Congress' express reason for Federalizing the screening function was that the existing system inadequately protected the public. The irrebuttable presumption that ATSA "substantially advances" the legislative purpose, Lingle, 125 S. Ct. at 2087, compels the corollary presumption that the Government and the public are more secure from terrorist attack via the commercial aviation system

(i.e., exposed to less "ongoing danger") under ATSA than they were before ATSA.

Stated differently, we agree with Huntleigh that the relative quality of the screening services formerly provided by Huntleigh and other companies is not at issue in the case. Pl. Br. 9. The reason the issue is irrelevant, however, is that ATSA's efficacy in improving airline safety is legally presumed and is not open to question. Furthermore, even if the quality of Huntleigh's performance were at issue, the quality could not be demonstrated by comparing Huntleigh's performance to the work of TSA, which involves different screening standards, new technologies and communication systems, and national, as opposed to airport-specific, coordination and mobilization. Our objections to producing immaterial information concerning the performance of TSA – which did not even exist when ATSA, the alleged cause of the taking, was enacted – should be sustained.

III. Other Interrogatories

A. Interrogatory No. 4

Huntleigh seeks the names of the FSDs at the airports at which Huntleigh formerly conducted screening, in the hope that "the FSDs will have firsthand knowledge of how passenger and baggage screening was conducted following the Government's takeover." Pl. Br. 12. Huntleigh maintains that this information could be relevant to damages. We have provided the

names of all FSDs who were in service as of July 15, 2005. It is unclear why Huntleigh remains dissatisfied, given the de minimis probative value of individual testimony and the limits under the RCFC upon the number and duration of depositions. It appears that Huntleigh may desire testimony regarding the resources expended by TSA to establish operations at these airports. That information, however, is maintained at TSA's headquarters in Arlington, Virginia, and is being produced in response to other discovery requests.

B. Interrogatory No. 9

Here, Huntleigh seeks information regarding turnover rates for screeners at TSA, purportedly to help it place its own turnover rates "in context" at trial. Id. at 12-13. For the reasons given above, however, whether Congress accurately perceived high turnover rates among screening companies is simply irrelevant, as would be any comparison between the personnel histories of private screening companies, including Huntleigh, and the experiences of TSA with Government employees. Our objection is proper.

C. Interrogatories No. 14 and 16

Huntleigh accuses us of providing "evasive and incomplete" responses to two interrogatories asking whether the Government contends that Huntleigh's screeners failed to adequately protect the public, either in general or at Logan Airport on September

11, 2001 in particular, and, if so, whether those failures "served as a justification for replacing Huntleigh's screeners with personnel from the TSA without providing just compensation therefor[.]" See Pl. Br. 13-15. We responded that Congress passed ATSA based upon its assessment of the shortcomings of the private screening industry in general – not of Huntleigh in particular – but we cautioned, citing Lingle, that the Government bears no burden "to 'justif[y]' the passage of ATSA, as [these] interrogator[ies] might imply."

These responses are accurate, candid, and complete, and they certainly pose no risk of "trial by surprise," as Huntleigh maintains. See Pl. Br. 14. To the contrary, as we explained in a letter to plaintiff dated August 22, 2005, Huntleigh refuses to accept answers that do not match its own theory of the case. Huntleigh insists that the Government has "argued, in substance, that Huntleigh and other private screening companies had presented a threat to [the] flying public such that their businesses could be confiscated without compensation." Pl. Br. 13. That may be how Huntleigh wishes to frame the issues, but it is not the "substance" of our position at all.

As an initial matter, Congress did not pass ATSA in order to "replace" Huntleigh's screeners with Government employees or to "confiscate" anything. Congress only relieved the regulated parties - the airlines - from responsibility for passenger and

baggage screening. ATSA removed screening responsibilities from all air carriers and, by extension, from the entire aviation security screening industry, not just from Huntleigh, as Huntleigh implies. After the passage of ATSA, the airlines exercised their contractual rights to terminate their contracts with private screening companies.

The breadth of the deregulation accomplished by Congress through ATSA means that the congressional record and statutory text comprise the "evidence" of the "character" of that action. And since ATSA applied "uniformly across the [security screening] industry, thereby spreading the burden imposed by the statute over the entire industry," Congress plainly did not require "a few select individuals [such as Huntleigh] to bear the burdens of the public benefit." See Maritrans, 342 F.3d at 1356-58 (affirming trial court's ruling that character of Governmental action weighed against takings claim).

Nor, as we properly advised Huntleigh (in the interest of avoiding trial by surprise), is the Government obligated to "justify" Congress' decision to relieve the airlines of screening responsibilities. As noted above, the Court will presume that Congress was properly dissatisfied with the overall performance of private airline passenger and baggage screening companies – including, without singling out, Huntleigh. We need not adduce evidence to "prove" that Congress concluded this, nor

can Huntleigh disprove it. Even assuming there was some ambiguity in our responses to interrogatories number 14 and 16, this brief should eliminate any misunderstanding.

IV. Pace Of Document Production

Finally, Huntleigh cites no authority to support its one-paragraph argument that the Government has not produced documents "with reasonable promptness," and we know of none. Pl. Br. 15-16. Further, although this point is arguably trivial, it is not true, as Huntleigh appears to imply, that it requested an "explanation" from us. Id. Had Huntleigh asked us to explain, we would have. Instead, the record before the Court contains only letters from Huntleigh's counsel demanding that the Government commit to firm dates for production, which we have been understandably unable to do. Our production efforts continue, as noted above. We anticipate completing our production within the next 21 to 30 days.

CONCLUSION

For the reasons given above, Huntleigh's motion to compel should be denied in part as moot, and otherwise denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

OF COUNSEL:

AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

September 16, 2005

CERTIFICATE OF FILING

I certify that on September 16, 2005, the foregoing was filed electronically. Service is complete upon filing and parties may access this filing through the Court's system.

s/Kyle Chadwick