IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HUNTLEIGH USA CORPORATION, Plaintiff, - against - THE UNITED STATES, Defendant. | No. 03-2670C (Senior Judge Margolis) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS AND TO ANSWER PLAINTIFF'S INTERROGATORIES**

Jonathan J. Lerner
Lauren E. Aguiar
William J. O'Brien
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-3000
Fax: (212) 735-2000
Attorneys for Plaintiff

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 4

I. THE GOVERNMENT'S NEW LEGAL ARGUMENTS THAT HUNTLEIGH'S DISCOVERY REQUESTS CANNOT LEAD TO RELEVANT EVIDENCE LACK MERIT ........................................ 4

II. REQUESTS RELATING TO THE PERFORMANCE OF PASSENGER AND BAGGAGE SCREENING: DOCUMENT REQUESTS 15, 18 AND 19, AND INTERROGATORIES 3, 9, 13, 14 AND 16 ........................................ 7

A. Interrogatory Nos. 3, 9 and 13, and Document Request Nos. 15, 18 and 19 .......... 7

B. Interrogatory No. 14 ........................................ 8

C. Interrogatory No. 16 ........................................ 9

III. DOCUMENT REQUESTS 9, 10 AND 16, AND INTERROGATORIES 4 AND 8 ....... 10

A. Document Request No. 9 ........................................ 10

B. Document Request No. 10 ........................................ 10

C. Document Request No. 16 and Interrogatory No. 8 ........................................ 11

D. Interrogatory No. 4 ........................................ 12

IV. THE GOVERNMENT CONCEDES THAT IT IS FAILING TO PRODUCE DOCUMENTS IN A TIMELY MANNER ........................................ 13

CONCLUSION ........................................ 14

# TABLE OF AUTHORITIES

## CASES

De Graffenried v. United States, 2 Cl. Ct. 640 (1983) .......... 13

First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304 (1987) .......... 6

Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440 (2005) .......... 4, 6, 7, 8

Huntleigh USA Corp. v. United States, 65 Fed. Cl. 178 (2005) .......... 4, 8

Jade Trading, LLC v. United States, 65 Fed. Cl. 487 (2005) .......... 1

Lingle v. Chevron U.S.A. Inc., 125 S. Ct. 2074 (2005) .......... 5, 6, 7

Penn Central Transportation Co. v. United States, 438 U.S. 104 (1978) .......... 5

## RULES AND REGULATIONS

14 C.F.R. § 17.3(g) .......... 10, 11

RCFC 1 .......... 3, 13

RCFC 26 .......... 1

## OTHER

147 Cong. Rec. H7635 (daily ed. Nov. 1, 2001) .......... 5

Plaintiff Huntleigh USA Corporation ("Huntleigh") respectfully submits this reply memorandum of law in further support of its motion to compel defendant, the United States (the "Government"), to produce documents and to answer plaintiff's interrogatories (the "Motion to Compel").

**INTRODUCTION**

This Motion to Compel is necessitated by the Government's failure to produce documents and answer interrogatories in violation of this Court's liberal discovery rules. See Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 491 (2005) (stating that RCFC 26 is to be "broadly construed"). But one would hardly know it from reading the Government's opposition brief. Rather than squarely address the sufficiency of its responses to Huntleigh's discovery requests, the Government devotes nearly half of its opposition to a discussion of the merits. (See Gov't Opp. Br. at 1-4, 11-12, 14-15.) The Government advances substantial legal arguments in an attempt to convince the Court that Huntleigh's requests for information concerning the performance of passenger and baggage screening are irrelevant. As explained below, the Government's arguments are legally baseless, conflict with prior rulings of this Court and, in the end, provide no basis to conclude that Huntleigh's requests will not lead to admissible evidence.

**The Motion to Compel Has Spurred Some Movement**

Only after Huntleigh was forced to file the Motion to Compel did the Government begin to provide information and suggest compromises to resolve some of the outstanding discovery disputes – information it did not provide in its Rule 26 responses or in the extended correspondence between counsel that led to the filing of Huntleigh's motion. Having forced Huntleigh to incur the expense of preparing this motion, the Government now states for the first time in its opposition brief and/or in supplemental interrogatory responses dated September 7, 2005 (seven days after this motion) that it will make available interim contracts and other

materials that are responsive to Document Request No. 9; and consider searching for data pertaining to the TSA's hiring of former Huntleigh screeners, in response to Document Request No. 16 and Interrogatory No. 8. The Government also has belatedly been forced by the Motion to Compel to take some long overdue first steps toward answering the contention interrogatories posed in Interrogatory Nos. 14 and 16. Finally, after representing to Huntleigh in its original objections that it had "entered into settlement agreements with certain security companies," the Government now informs us (again, for the first time) that it has settled no post-September 11 disputes with private screening companies, and says it has no documents to produce in response to Document Request No. 10. As these eleventh-hour responses make clear, the Government has succeeded in accomplishing what it no doubt intended from the beginning – to delay its disclosure of relevant information and, in so doing, prejudice Huntleigh's prosecution of this case.

**Status of Outstanding Issues**

As the Court suggested during the September 14, 2005 telephonic status conference, the parties have made progress with regard to a number of issues, while several others remain outstanding and require the Court's attention. For the Court's convenience, set forth below is a chart summarizing the status of Huntleigh's document requests and interrogatories:

| **Document Requests/ Interrogatories** | **Status** |
|---|---|
| Document Request No. 9 | ▸ Tentatively resolved.<br>▸ In its opposition brief, the Government has offered to make available for inspection 47 boxes containing 70 interim screening contracts and related documents.<br>▸ If boxes contain requested materials, Court will not have to address this aspect of motion. |
| Document Request No. 10 | ▸ Resolution being explored.<br>▸ Huntleigh has asked Government to respond based on a reasonable definition of "claim."<br>▸ Government has yet to respond. |

| | |
|---|---|
| Document Request No. 16; Interrogatory No. 8 | ▸ Resolution being explored.<br>▸ Government will search for information only if Huntleigh provides list that includes Social Security numbers of its former employees.<br>▸ Huntleigh is willing to provide alphabetical list with Social Security numbers redacted. Government has yet to agree. |
| Interrogatory No. 14 | ▸ Resolution being explored.<br>▸ Government has suggested that evidence regarding the performance of private screening companies is not relevant.<br>▸ If Government serves adequate response to this contention interrogatory, Court will not have to address this aspect of motion. |
| Interrogatory No. 16 | ▸ Resolution being explored.<br>▸ Government has suggested that evidence concerning Huntleigh's performance at one airport on September 11, 2001 is not relevant.<br>▸ If Government serves adequate response to this contention interrogatory, Court will not have to address this aspect of motion. |
| Interrogatory Nos. 3, 9 and 13; Document Request Nos. 15, 18 and 19 | ▸ **Outstanding.**<br>▸ Government has suggested that evidence regarding the performance of private screening companies is not relevant. |
| Interrogatory No. 4 | ▸ **Outstanding.**<br>▸ Government has refused to provide additional names and addresses sought by interrogatory. |

**The Government's Delay**

Finally, Huntleigh has had no success in persuading the Government to produce documents in a timely manner. Huntleigh's document requests were served on June 10, 2005. The Government does not – and cannot – dispute that as of September 16, 2005, the date of the opposition brief, it had not delivered a single document to Huntleigh since its paltry initial production on August 5, 2005, which contained only one half of a box of documents. Without question, the pace of the Government's production threatens to undermine Huntleigh's right to "the just, speedy, and inexpensive determination of [this] action." See RCFC 1.

## ARGUMENT

### I.

### THE GOVERNMENT'S NEW LEGAL ARGUMENTS THAT HUNTLEIGH'S DISCOVERY REQUESTS CANNOT LEAD TO RELEVANT EVIDENCE LACK MERIT

Huntleigh has propounded eight discovery requests that relate, in one way or another, to the performance of passenger and baggage screening. The Court has already ruled that Huntleigh may, if necessary, introduce evidence that it was a well-respected company that carried out its duties in compliance with the law, and in no way presented a danger to the public. Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 448-49 (2005) ("Huntleigh I"); see also Huntleigh USA Corp. v. United States, 65 Fed. Cl. 178, 180 (2005) ("Huntleigh II").[1]

In an effort to forestall any discovery whatsoever, the Government prematurely argues that "the adequacy of private screening should not be addressed as a factual matter at trial." (Gov't Opp. Br. at 2.) In advancing this position, the Government represents that it will not introduce evidence regarding "the relative quality of the screening services formerly provided by Huntleigh and other companies." (Id. at 12.) While attempting to deny Huntleigh access to evidence (including Government admissions that Huntleigh's performance was first rate), the Government claims that Huntleigh's performance as a screener is irrelevant "as a factual matter"

---

[1] The Court issued its ruling in response to arguments made by the Government in its motion to dismiss. The Government had asserted that Congress can destroy a claimant's property interest without compensation when the claimant's use of its property poses an "imminent danger" to the community. (See Gov't Mot. to Dismiss Br. at 45-48.) The Government further argued (i) that in considering the Aviation and Transportation Security Act ("ATSA"), Congress concluded that private screening companies were not performing their duties adequately, and (ii) that this so-called failure empowered Congress to eliminate these businesses without compensation. (See id.) As this Court observed, the Government's "imminent danger" cases were all distinguishable, since Huntleigh was alleged to be a law abiding company. Huntleigh I, 63 Fed. Cl. at 448-49; Huntleigh II, 65 Fed. Cl. at 180. The Court further held, as noted above, that Huntleigh could present evidence to refute the Government's suggestions to the contrary. Id.

because the Government is entitled to "conclusive" and "irrefutable" legal presumptions that (i) Congress "was properly dissatisfied with the overall performance of private airline passenger and baggage screening companies," (ii) the ATSA "substantially advances" a legitimate purpose conceived by Congress, and (iii) the public is "more secure from terrorist attack now than it was prior to passage of the ATSA." (See id. at 2-4, 11-12, 14-15 (emphasis omitted).)

These novel arguments reflect an attempt by the Government to have it both ways. On the one hand, the Government wants to argue that private screening companies like Huntleigh were performing inadequately, and that Congress was therefore justified in confiscating their businesses without compensation. At the same time, the Government also wants to block Huntleigh from probing the merits of this assertion through discovery, on the theory that the Government's self-serving version of events is legally presumed and irrefutable. These arguments are without legal merit, conflict with this Court's prior rulings and thus cannot serve as grounds for establishing that Huntleigh's requests are irrelevant.

First, this Court need not presume that Congress was dissatisfied with the performance of private screening companies. Despite the Government's suggestions to the contrary, the Supreme Court's decision in Lingle v. Chevron U.S.A. Inc., 125 S. Ct. 2074 (2005), has not overruled this Court's findings. Justice O'Connor, writing for the Court in Lingle, did not even address, much less limit, the ability to introduce such evidence under the test established in Penn Central Transportation Co. v. United States, 438 U.S. 104 (1978), and in fact expressly reaffirmed the vitality of Penn Central in the takings context. See Lingle, 125 S. Ct. at 2087.[2]

[2] The Government is also wrong to suggest that Congress's decision to pass the ATSA was motivated by its dissatisfaction with any one aspect of the aviation industry. In fact, there were divergent views in Congress about who was to blame for the state of aviation security, and the FAA itself was the subject of significant criticism during the hearings conducted prior to the ATSA's enactment. See, e.g., 147 Cong. Rec. H7635 (daily ed. Nov. 1, 2001) (statement of Rep. Duncan) (criticizing FAA for failing to implement security measures aimed at improving

Second, whether the ATSA was enacted for a legitimate purpose is irrelevant to the issue of whether a taking has occurred. See Huntleigh I, 63 Fed. Cl. at 449 ("'Congress' purpose in enacting the statutes may have been entirely legitimate but the government has not shown that the actions Congress took . . . were within its powers to exercise without also granting compensation.'") (citing Cienega Gardens v. United States, 331 F.3d 1319, 1338-40 (Fed. Cir. 2003)). Indeed, the Fifth Amendment's very purpose is to provide compensation for "otherwise proper" acts of regulation. First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 315 (1987) (observing that Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking."). Thus, it does not help the Government's cause to argue that "Congress acted to protect public health, welfare, and safety." (Gov't Opp. Br. at 4.)[3]

Third, the Government is wrong in ascribing legal significance to whether the ATSA has been successful in improving aviation security. As Justice O'Connor recently observed in language that is equally relevant here: "The owner of property subject to a regulation that effectively serves a legitimate state interest may be just as singled out and just as burdened as the

---

screening).) As these and other comments make clear, Congress was broadly concerned with an aviation security system that was comprised of numerous participants, including airports, airlines, private security companies and the Government.

[3] Reprising yet another argument from its motion to dismiss, the Government declares that "Congress did not pass [the] ATSA in order to 'replace' Huntleigh's screeners with Government employees or to 'confiscate' anything." (Gov't Opp. Br. at 14.) Rather, it "only relieved the regulated parties – the airlines – from responsibility for passenger and baggage screening," and spread what it euphemistically describes as a "deregulation" of screening uniformly across the entire industry. (Id. at 14-15.) Besides being irrelevant to Huntleigh's Motion to Compel, this argument has already been rejected by the Court. See Huntleigh I, 63 Fed. Cl. at 448 ("[T]he government has taken over Huntleigh's position as the contractor, and has created for itself a sweeping monopoly over the entire industry."); see also id. at 449 (observing that while Congress may have acted for a public purpose, "the entire expense was placed on Huntleigh").

owner of property subject to an ineffective regulation. It would make little sense to say that the second owner has suffered a taking while the first has not." Lingle, 125 S. Ct. at 2084. In short, the Government's contention that Congress made the right decision in federalizing passenger and baggage screening is beside the point. At this juncture, Huntleigh is entitled to discovery of documents that may lead to admissible evidence. The time for the Government to make in limine motions is later – when the Court can evaluate the specific evidence in context. The Government cannot, as it attempts to do, invoke dubious legal arguments to block wholesale areas of inquiry.

## II.

## REQUESTS RELATING TO THE PERFORMANCE OF PASSENGER AND BAGGAGE SCREENING: DOCUMENT REQUESTS 15, 18 AND 19, AND INTERROGATORIES 3, 9, 13, 14 AND 16

### A. Interrogatory Nos. 3, 9 and 13, and Document Request Nos. 15, 18 and 19

These requests and interrogatories seek information concerning the TSA's performance as a passenger and baggage screener. As Huntleigh explained in its opening brief, it propounded these requests based on its understanding that the Government would attempt to argue that private screeners failed to adequately protect the flying public prior to the September 11 attacks, and then use this evidence as a so-called basis for justifying its confiscation of Huntleigh's property without compensation. (See Huntleigh Br. at 8-9.)

As noted above, in an attempt to convince this Court that Huntleigh's requests are irrelevant, the Government claims "that the relative quality of the screening services formerly provided by Huntleigh and other companies is not at issue" as a factual matter because, as a legal matter, the poor performance of private screening companies is presumed and not open to dispute. (See Gov't Opp. Br. at 3-4, 12, 15-16.) This flawed premise makes clear that, despite its

suggestions to the contrary, the Government intends to place Huntleigh's performance at issue. It wants to do it without fearing contradiction. That is, it wants to argue that the performance of private screening companies was inadequate while, at the same time, preventing Huntleigh from eliciting contrary evidence from the Government's own files through discovery. As this Court has recognized, however, Huntleigh must be able to refute any such arguments with evidence that it was a quality screener that discharged its duties in compliance with federal law. See Huntleigh I, 63 Fed. Cl. at 448-49; Huntleigh II, 65 Fed. Cl. at 180. In judging the relative skill of Huntleigh's screeners, it certainly would be relevant to know how other organizations (such as the TSA) fared in discharging the same responsibilities at the same airports. The requests identified above will help Huntleigh perform this comparative analysis, and thus are proper.

Regardless of the Government's intentions, Huntleigh intends to present evidence that it was a highly-regarded screener with an excellent reputation among air carriers both large and small. Among other things, such evidence is probative of whether Huntleigh had a reasonable, investment-backed expectation that its screening business would have continued but for its elimination by Congress. See Huntleigh I, 63 Fed. Cl. at 449 (citing "reasonable, investment-backed expectations" as one factor to consider under the Penn Central test). Of course, admissions by the Government would be probative on this issue as well.

**B. Interrogatory No. 14**

Huntleigh propounded Interrogatory No. 14 because the Government suggested it would attempt to discredit Huntleigh's performance as a screener, and then use the claimed shortcomings to justify the taking of Huntleigh's property without compensation. (Huntleigh Br. at 8-9, 13-14.) To be sure, the Government now claims that "the adequacy of private screening should not be addressed as a factual matter at trial." (Gov't Opp. Br. at 2.) The Government further represents that if it mentions the adequacy of private screening at all, it (i) will rely solely

on the text and legislative history of the ATSA (see id. at 4 ("[T]he text and legislative history of ATSA alone are sufficient to demonstrate that Congress acted to protect the public health, welfare, and safety.")), and (ii) will not "singl[e] out" Huntleigh for criticism (see id. at 15). During a September 20 teleconference, counsel for both parties discussed the idea of the Government amending its response to Interrogatory No. 14 or having the parties enter into a stipulation. Huntleigh is willing to consider this approach, and will discuss this issue with the Government before the October 11 hearing date.

**C. Interrogatory No. 16**

In its opposition brief, the Government does not directly address Interrogatory No. 16, which asks a very straightforward question: Does the Government intend to criticize the performance of Huntleigh's passenger and baggage screeners at Logan Airport's United Airlines terminal on September 11, 2001? Instead, the Government engages in a general discussion about what Congress purportedly intended to accomplish by passing the ATSA, and whether, as a legal matter, the Court must presume that the legislation has been effective in improving aviation security. (See Gov't Opp. Br. at 13-16.)

On September 20, 2005, counsel for Huntleigh sought clarification from the Government regarding its response to Interrogatory No. 16. At that time, counsel for the Government confirmed that the Government would not raise the issue of Huntleigh's performance at Logan Airport's United Airlines terminal on September 11, 2001. If the Government memorializes this statement in an appropriately-worded and certified interrogatory response, there will be no need for the Court to deal with this aspect of Huntleigh's motion.

## III.

## DOCUMENT REQUESTS 9, 10 AND 16, AND INTERROGATORIES 4 AND 8

### A. Document Request No. 9

The Government has agreed – only after Huntleigh sought judicial intervention through this Motion to Compel – to provide substantially all of the information requested in Document Request No. 9. (See Gov't Opp. Br. at 5-7.)[4] The Government represents that it will make available for inspection and copying 47 boxes that contain 70 screening contracts between the Government and private screening companies and "supporting documents" relating to the same. (Id. at 6-7.) If these boxes contain the information Huntleigh seeks, the Court need not decide this aspect of the Motion to Compel. Huntleigh requested that the Government make these documents available for inspection the week of October 3. In response, the Government informed us that these materials would not be ready for examination until the following week.

### B. Document Request No. 10

Document Request No. 10 seeks documents concerning the settlement of any post-September 11 claim involving the government and a private screening company. The Government's opposition brief unilaterally limits its response to "'disputes' within the meaning of 14 C.F.R. § 17.3(g)." (Gov't Opp. Br. at 8.) Section 17.3(g), an FAA regulation, defines "contract disputes" as a "written request to the Office of Dispute Resolution for Acquisition seeking resolution, under an existing FAA contract subject to the AMS, of a claim for payment

[4] While the Government has agreed to produce its interim contract with Globe Aviation Services, it has refused to produce other documents relating to the administration of that contract. (Gov't Opp. Br. at 7.) While Huntleigh continues to believe it is entitled to all such information pertaining to Globe, in the spirit of compromise, it will withdraw this part of its request based on the Government's representation that "no documents exist 'in which the [G]overnment agreed to pay money to a private screening company as compensation for the Government's take over of passenger and baggage screening.'" (Id.)

of money in a sum certain . . ." 14 C.F.R. § 17.3(g). Having narrowed the scope of Document Request No. 10 to its liking, the Government represents that it has not settled any ODRA disputes with private screening companies and that, as a result, there are no responsive documents to produce. (Gov't Opp. Br. at 8.) Notably, this assertion is at odds with the Government's original objection, which stated that "[t]he United States did enter into settlement agreements with certain security companies relating to disputes over payments in connection with their interim contracts with the Government."

The phrase "post-September 11 claim" was intended to capture any disputes or controversies between the Government and a private screening company, whether formal or informal. Thus, a claim in this context might include a private screening company's demand that it be compensated for the taking of its business. On September 20, 2005, counsel for Huntleigh informed the Government that its "presume[d]" construction of "post-September 11 claim" was too narrow, and requested that the Government respond to the document request using the more expansive definition. The Government has yet to respond. The Government also has not explained the inconsistency between its original objection (which states that there were settlements with private security companies) and its opposition brief (which says there were not).

**C. Document Request No. 16 and Interrogatory No. 8**

These requests seek information concerning the hiring of former Huntleigh screeners by the TSA. On September 7, 2005 (one week after Huntleigh incurred the time and expense of filing the Motion to Compel), the Government offered to provide the information requested in Document Request No. 16 and Interrogatory No. 8 – so long as Huntleigh furnished a list of its terminated screening employees. (See Gov't Opp. Br. at 8-9.) The Government later "amend[ed]" this offer by demanding, without explanation, that Huntleigh's list include the

Social Security numbers of former employees. (Id. at 9.) Huntleigh is willing to provide an alphabetical list of employees so long as it can redact the Social Security numbers.

The Government should perform the search that it originally offered to undertake, without requiring Huntleigh to disclose the Social Security numbers of its former employees. There is no legitimate reason why the Government needs this highly personal information. The Government, by its own admission, maintains its files in alphabetical order. (Id. at 10.) Thus, it should suffice for Huntleigh to furnish a list that likewise sets forth the names of its terminated employees in alphabetical order. If two or more former Huntleigh employees have the same name, Huntleigh can – and will – work with the Government on a case-by-case basis to identify ways of distinguishing between such individuals.

**D. Interrogatory No. 4**

Huntleigh established in its opening brief that the Government has refused to provide, for reasons that are still unclear, the names and last known addresses for all Federal Security Directors who were responsible for managing Huntleigh's former screening checkpoints from 2002 to 2005. Instead, it furnished an incomplete list of individuals who were FSDs as of July 15, 2005. On its face, the list would not include FSDs who left their positions prior to this date. The Government does not dispute that the list omits the names of at least some of the FSDs who managed Huntleigh's former screening checkpoints during the 2002-2005 time period (see Gov't Opp. Br. at 12-13), when aviation security requirements were greatly expanded under the TSA's supervision. Notably, the Government does not suggest that it is unable to provide a complete response to this interrogatory, nor does it even purport to claim that disclosing a limited number of additional names would be burdensome. (See id.) On this basis alone, the Government should be compelled to furnish the remaining names and addresses.

The best that the Government can do is cavalierly claim that Huntleigh does not need the names of additional FSDs because seeking testimony from these individuals would be of "de minimis probative value." (Id. at 13.) It then proposes that Huntleigh should pore through the Government's documents – which, parenthetically, the Government has yet to produce – for information that FSDs could testify about based on firsthand knowledge. It is well-settled, however, that "[t]he party employing discovery has the discretion to choose the particular method of discovery that suits his need best." De Graffenried v. United States, 2 Cl. Ct. 640, 644 (1983). Thus, it is no answer for the Government to say that Huntleigh can obtain equivalent information through alternative discovery devices. Interrogatory No. 4, with its standard request for names and addresses, is an appropriate, narrowly tailored and necessary first step toward securing relevant testimony.

## IV.

## THE GOVERNMENT CONCEDES THAT IT IS FAILING TO PRODUCE DOCUMENTS IN A TIMELY MANNER

The Government does not even try to offer an explanation for the slow pace of its document production (see Gov't Opp. Br. at 16), nor could it. It is undisputed that the Government, with its vastly superior resources, has located, reviewed and produced only one half of a box of documents since receiving Huntleigh's document request in the middle of June – roughly 3½ months ago. Given these facts (which are not contested), the Government cannot argue that it is discharging its discovery obligations with reasonable promptness, as required by the Rules of this Court. See RCFC 1 ("These rules . . . shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

Indeed, the Government's unilateral delay is making a mockery of the deadlines imposed in the Court's discovery schedule by making compliance impossible. The Government predicts

that it may conclude its document production in the middle of October – only two months before the fact discovery deadline of December 15, and a full <u>four months</u> after receiving Huntleigh's document request. Without question, this dilatory conduct has prejudiced – and is continuing to prejudice – Huntleigh's ability to complete fact discovery before the December 15 deadline. Accordingly, the Government should be compelled to complete its document production promptly after the determination of this motion.

**CONCLUSION**

For the foregoing reasons, Huntleigh respectfully requests that the Court issue an order (i) granting this motion in its entirety; (ii) compelling the Government to produce documents in response to each of the document requests identified above; (iii) compelling the Government to completely answer all of the interrogatories referenced above; and (iv) granting such other and further relief as it may deem just and proper.

Dated: September 30, 2005
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

/s/ Jonathan J. Lerner
Jonathan J. Lerner (attorney of record)
Lauren E. Aguiar
William J. O'Brien
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-3000
Fax: (212) 735-2000
Attorneys for Plaintiff