IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2670C |
| | ) | (Senior Judge Margolis) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RCFC 30(b)(6) TESTIMONY AND PRODUCTION OF ADDITIONAL DOCUMENTS

Pursuant to Rule 7.2(a) of the Court's Rules ("RCFC"), defendant, the United States, respectfully opposes the December 23, 2005 motion of plaintiff, Huntleigh USA Corporation, to compel (i) testimony, pursuant to RCFC 30(b)(6), concerning topics 5, 6, and 7 identified in plaintiff's November 18, 2005 notice of deposition, and (ii) production of additional documents relating to those topics. The Government respectfully endorses Huntleigh's request for expedited consideration.

THE GOVERNMENT'S RELEVANCE OBJECTIONS ARE VALID

Huntleigh seeks testimony and documents, in addition to materials already produced by the Government, concerning the "changes or enhancements" introduced by the Government after it assumed responsibility for airline passenger and baggage screening as a public function; the Government's screening-related "budgets"; and the "costs incurred and monies received" by the Government in connection with screening, since 2002, i.e., following the enactment of the Aviation and Transportation

Security Act of 2001 ("ATSA"), which Federalized the screening function. See Pl. Mot. 2.

Huntleigh argues that this information is relevant to measuring its damages under its takings claim. It asserts that "a hypothetical buyer would have taken into consideration the increased need for, and costs of, screening post September 11," 2001, Pl. Mot. 3, and that, as a result, information relating to the Federal Government's screening practices, budgets, and costs since the time of the alleged taking "will assist [plaintiff to confirm] what a potential buyer would have paid for the Company at the time of the taking." Id. at 5.

Huntleigh is mistaken. As a threshold matter, we note that the complaint does not allege damages for a taking of "the Company." Instead, the Court has stated, "Plaintiff alleges that by virtue of the Act, the government has taken its business assets, including its long-term screening contracts, goodwill and going-concern value." Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 444 (2005).

Setting aside the continuing question of exactly what "property" Huntleigh claims to be at issue, the motion lacks legal merit. Huntleigh seeks evidence relating to screening conducted by a Federal agency – first, using short-term Government contractors and, after November 2002, using Federal employees – yet Huntleigh claims this evidence is relevant to the

price that a buyer in the private market preceding the Federalization of the screening function - a market that no longer exists - would have been willing to pay for Huntleigh's assets. See, e.g., Almota Farmers Elev. & Warehouse Co. v. United States, 409 U.S. 470, 474 (1943).

Plaintiff's three objectionable RCFC 30(b)(6) topics have nothing to do with estimating that hypothetical, pre-ATSA market price. The actual, real-world experience of the Federal Government since it assumed responsibility for passenger and baggage screening - and eliminated the requirements that had caused airlines to retain screening companies from the private sector - cannot shed any light on what "would have" occurred in the private market if the Government had not taken those steps.

Before the passage of ATSA, airlines, in compliance with Federal Aviation Administration regulations, conducted passenger and baggage screening, either by using airline personnel or by hiring screening companies, such as Huntleigh. In ATSA, Congress decreed that the Federal Government would take responsibility from the airlines for passenger and baggage screening, within 90 days, i.e., by February 17, 2002. The entire market in which commercial airlines purchased private screening services disappeared. The airlines, including Huntleigh's customers, terminated their now-unnecessary private screening contracts prior to February 17, 2002.

There are, in effect, two "worlds": the real world in which ATSA was enacted and the "but-for world," created by imagining, for purposes of estimating just compensation, that a buyer would have expected a private screening market, and a market for Huntleigh's screening-related assets, to continue to exist after November 2001. The two systems – real and hypothetical, public and private – cannot reasonably be compared.

The issue is not whether facts that occur after the date of a taking can ever be relevant to measuring just compensation. The point, rather, is that the Government's post-ATSA conduct is irrelevant to market value in this case. None of the decisions upon which Huntleigh relies to support its relevance argument – and no other case law of which we are aware – endorses a court's consideration of "post-taking" evidence that (i) does not concern the same circumstances or market environment that existed when the taking occurred, and that (ii) the claimant wishes to use only for the purpose of hypothesizing a non-existent marketplace, in a "but-for" world. See Pl. Mot. 4-5.

One decision cited by Huntleigh holds only that, under a Florida statute, the value of a taken parcel of agricultural land includes the eventual sale value of crops, "with a growing period of no more than one year," which were planted but immature at the time of the taking. Lee County v. T&H Assoc., Ltd., 395 So. 2d 557, 560 & n.2 (Fla. 1981) (noting "the rule may be entirely

different" for "plants with a growing life in excess of a year"). This arcane state doctrine has nothing to do with valuing Huntleigh's contracts or other assets.

The other decisions upon which Huntleigh relies at least involve Federal law. However, the courts there considered post-taking evidence only for limited purposes, in considering actual, real-world circumstances that directly affected the value of the subject property after the taking. This case differs from all of those cited by Huntleigh in that, here, there was no private market for the subject property following the alleged taking.

In Georgia-Pacific Corp. v. United States, 640 F.2d 328 (Ct. Cl. 1980), the property to be valued consisted of timbered forest land adjacent to a new park, created from a former part of the same parcel. The plaintiff argued that proximity to the park reduced the value of the timber property (imposing "severance damages"). The court observed, however, that "[t]he presence of a park is generally not considered to have a depreciating effect on the surrounding lands," id. at 339, and noted that this general expectation was confirmed by, among other evidence, a review by the Government's expert of actual logging practices in the same vicinity, after the taking. See id. at 337-38 & n.5,

345-47 & n.21. No counterfactual or "but-for" analysis was involved in Georgia-Pacific.[1]

Similarly, in Whitney Benefits, Inc. v. United States, 18 Cl. Ct. 394 (1989), the property was coal, and this Court considered a post-taking contract merely as evidence concerning how a market for the coal in fact developed. Id. at 402-03. The court in United States v. 38,994 Square Feet of Space, 1989 WL 152806 (N.D. Ill.), meanwhile, permitted the Government to rely upon "data regarding actual abatement, construction and financing costs incurred" after the date of condemnation, as evidence of what a hypothetical, reasonable buyer would have expected those costs to be. Id. at *1 (emphasis added).[2] Again, this post-taking evidence bore an obvious and direct relationship to the real-world market value of existing property.

In sharp contrast, the Government's practices, budgets, and costs associated with the performance of screening by Government contractors and employees bear no conceivable economic relationship to any existing, post-ATSA market for the assets

---

[1] Tanner v. Little, 240 U.S. 369 (1916), quoted in Georgia-Pacific, described a legislative judgment, concerning the need to regulate store coupons and trading stamps, as a finding "from experience as against . . . from speculation." Id. at 385-86. Tanner says nothing about the legal issue raised here.

[2] See also Sinclair Ref. Co. v. Jenkins Petroleum Proc. Co., 289 U.S. 689, 698 (1933) (approving, in contract case involving a patent, consideration of evidence of post-breach sales of patented product in "measuring the damages for a breach of contract or a tort").

that Huntleigh alleges were taken, or to any costs or benefits that a buyer of the assets would have encountered in the real world. Given the fundamental restructuring that resulted from ATSA, the information sought by Huntleigh cannot shed any retrospective light upon "how a potential buyer at th[e] time [of the taking] would have evaluated Huntleigh's prospects for growth, future business and cash flow." Pl. Mot. 5. The market conditions that this potential buyer would have expected and taken into account evaporated when ATSA was enacted and the alleged taking occurred.

We need not, and do not, dispute the potential usefulness of a "but-for" valuation analysis. Our point is that facts relating to Federal screening practices, budgets, or costs <u>after</u> the Government assumed responsibility from the private sector cannot tell the Court anything about the reasonableness of a hypothetical buyer's expectations in 2001 or 2002, relating to the private marketplace that soon ceased to exist. Accordingly, the Government has properly objected to topics 5-7 and should not be put to the burden of preparing an RCFC 30(b)(6) witness to convey this irrelevant information. The Court should deny Huntleigh's motion to compel production of additional documents relating to the same issues for the same reasons.

## CONCLUSION

For the reasons given above, we respectfully request the Court to deny plaintiff's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

January 5, 2006

CERTIFICATE OF FILING

I certify that on January 5, 2006, the foregoing was filed electronically. Service is complete upon filing and parties may access this filing through the Court's system.

s/Kyle Chadwick