IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION, Plaintiff, | : | No. 03-2670C |
| - against - | : | (Senior Judge Margolis) ECF Case |
| THE UNITED STATES, Defendant. | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT TO DESIGNATE AND PRODUCE A WITNESS PURSUANT TO RCFC 30(b)(6), TO COMPLETE ITS DOCUMENT PRODUCTION AND FOR EXPEDITED CONSIDERATION**

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff Huntleigh USA Corporation ("Huntleigh") respectfully replies to the Defendant's Opposition to Huntleigh's Motion to Compel, filed on January 5, 2006.

Through this motion, Huntleigh seeks to compel the Government to designate a witness to testify regarding the costs/budgets associated with passenger and baggage screening and the changes/enhancements to screening after federalization, and requests that the Government complete its document production in this regard. Huntleigh seeks this post-taking information to confirm the reasonableness of its assumptions regarding fair market value at the time of the taking, an entirely permissible use under settled precedent. Although the Government has resisted such discovery and forced Huntleigh to file this motion, in its opposition the Government now agrees that in measuring just compensation, courts and litigants are permitted to consider events that occurred after a taking. Indeed, the Government expressly concedes that "facts that occur after the date of a taking" are

relevant to measuring the reasonableness of a damages calculation. (Gov't Opp. at 4; see also id. at 7 ("We need not, and do not, dispute the potential usefulness of a 'but-for' valuation analysis.").) Thus, there is no dispute that discovery of such post-taking evidence is in fact appropriate; the only question is whether it could lead to relevant evidence here.

The Government suggests that post-taking evidence is not discoverable in this particular action and attempts to draw a distinction between this case and the body of law which, it does not dispute, holds that such evidence is discoverable. The Government argues that in this case, post-taking facts should not be considered because the purported "fundamental restructuring" of passenger and baggage screening following federalization eliminated the "market" for these services. (Gov't Opp. at 3, 7.) The Government then asserts that screening is now performed in such a totally different manner than how it was performed before, that evidence regarding the current environment could not possibly shed any light on the reasonableness of a hypothetical buyer's assessment of the future value of Huntleigh. This argument is flawed in several respects.

First, the Government invents its argument (that the relevance of the post-taking evidence is dependent on the exact nature of the post-taking "market") from whole cloth without citing any legal authority supporting its assertion. The Government's opposition does not contain one case that even alludes to the concept that there must be a continuing, comparable, similar "private market" for the business that was taken.

Second, the Government suggests that the private screening market "disappeared" and that the public/Government practices are not comparable. (Gov't Opp. at 3.) This is an entirely circular and self-fulfilling argument. The Government cannot use the fact of the taking itself -- which is what made private screening unlawful in the first place -- to deprive Huntleigh of evidence that will

assist in developing its damages case and presenting a fully reasoned valuation of Huntleigh. The private market "disappeared" only because the federal government took it over.[1] If this argument were adopted, then a plaintiff in a business takings case would never be able to rely upon post-taking evidence because, by definition, its private business no longer exists. No such restrictive rule exists or should be endorsed.

Third, while private screening was rendered unlawful -- solely by virtue of the ATSA -- screening did continue under the TSA. The Government's hypothetical constructs of "real" and "but for" worlds are not as different as the Government would have this Court believe. In fact, the TSA hired many of its current employees from private screening companies such as Huntleigh. The TSA still incurs a cost to compensate its employees, as Huntleigh did. It still operates the <u>same security check points</u>, for the <u>same airlines</u>, at the <u>same airports</u> that were serviced by Huntleigh for years. The TSA trains individuals on security equipment which is similar (albeit supposedly enhanced) to that used by private screening companies.[2] These are actual, real world circumstances that provide a helpful body of evidence for Huntleigh. The Government is performing <u>actual</u> screening services, just like the actual logging practices in <u>Georgia Pacific Corp. v. United States</u>, 640 F.2d 328 (Ct. Cl. 1980) and the actual coal market in <u>Whitney Benefits, Inc. v. United States</u>, 18 Cl. Ct. 394 (1989).

---

1 The Government makes a passing allegation regarding the "property" that has been taken. (Gov't Opp. at 2.) The Government's semantic games notwithstanding, Huntleigh has articulated from day one the nature of the property at issue and made clear that this is a case alleging the taking of an ongoing passenger and baggage screening business.

2 Strangely, the Government suggests that the world is so different now because the TSA used "short term Government contractors and, after November 2002, us[ed] Federal employees" to conduct screening. (Gov't Opp. at 2, 6.) This argument is particularly puzzling given that the "Government contractors" were actually private screening companies, including Huntleigh, and many "Federal employees" are former employees of companies such as Huntleigh.

The Government simply cannot withhold this relevant evidence because it now happens to be the entity providing screening services.

Relatedly, the proposition that screening is now so different from how it was prior to passage of the ATSA may be an expedient strategy for the Government, but it is at odds with arguments advanced by the Government last year in its Motion to Dismiss. Then, the Government argued that the Government has always regulated screening and "dictated how it would be accomplished," and that after September 11, the Government simply took over the "burden" of providing screening. (Motion to Dismiss at 46-47.) The ATSA mandated that the Government assume responsibility for the same services under the same pre-existing contracts with the same airlines. What the TSA is doing is unquestionably similar to what Huntleigh was doing, and would still be doing, were it not for the ATSA. Now, the Government conveniently suggests that the ATSA so fundamentally changed the landscape of screening that screening today bears no "conceivable . . . relationship" to the pre-ATSA operations. (Gov't Opp. at 6.) The Government cannot have it both ways.

Finally, it is critical to note that the Government already has produced documents that are directly responsive to these topics -- including personnel, wage, hiring, and equipment information, and general funding and cost information regarding screening services. The Government did not even mention this fact in its opposition. By producing such documents, the Government preserves the right to use this evidence at trial in its affirmative case or to rebut Huntleigh's evidence regarding value, and it has not disavowed any intention of doing so. On this basis alone, Huntleigh should be permitted to depose a witness on these topics and the Government should be instructed to produce all such responsive documents prior to that deposition.

Huntleigh seeks information to which it is entitled pursuant to this Court's broad discovery rules for limited the purpose of confirming the reasonableness of its assumptions regarding what a potential buyer would have considered in measuring the value of Huntleigh. The similarity (or, as the Government argues, dissimilarity) between pre- and post-taking screening theoretically could go, at most, to the weight such evidence should be afforded, but certainly not to its underlying relevance.

**CONCLUSION**

For the foregoing reasons, Huntleigh respectfully requests an order (1) granting the motion in its entirety; (2) compelling the Government to designate and produce a witness to testify as to Topics 5-7 of Huntleigh's Rule 30(b)(6) deposition notice; (3) compelling the Government to provide in advance of this deposition a complete production of documents in response to Huntleigh's Interrogatory No. 10 and Document Request No. 8; and (4) granting such other and further relief as it may deem just and proper.

Dated: January 10, 2006
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

/s/ Jonathan J. Lerner
Jonathan J. Lerner (attorney of record)
Lauren E. Aguiar
William J. O'Brien
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-3000
Fax: (212) 735-2000
Attorneys for Plaintiff