# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-2670C<br>(Senior Judge Margolis) |

DECLARATION OF KIP HAWLEY

1. I, Edmund "Kip" Hawley, am the Assistant Secretary, Department of Homeland Security, Transportation Security Administration (the TSA Administrator).

2. This declaration responds to the Court's order dated January 17, 2006, directing the Government to certify that the proper procedures have been followed for asserting the deliberative process privilege with respect to certain documents sought by plaintiff, Huntleigh USA Corporation, in discovery. The statements below are based upon my personal knowledge.

3. I have personally reviewed each of the documents attached to this declaration and determined that the deliberative process privilege applies, for the reasons stated below.

4. The first 14 documents all relate to testimony given on January 23, 2002 by John Magaw, then Under Secretary of the Department of Transportation for Aviation Security, before the aviation subcommittee of the House Committee on Transportation and Infrastructure, regarding the agency's compliance with the requirements of the Aviation Transportation Security Act of 2001 (ATSA). At the time this testimony was given, TSA was still in the process of being created. As a result, in preparing Under Secretary Magaw's testimony, the agency faced numerous, fundamental policy decisions regarding how to measure TSA's progress in meeting the requirements of ATSA, how to define TSA's broader mission, and how to communicate these conclusions to Congress.

5. Specifically, document 1 consists of a string of e-mails dated January 16, 2002 discussing whether to use in Under Secretary Magaw's testimony certain language from two

speeches delivered previously by Transportation Secretary Norman Mineta. (The transcripts attached to these e-mails were initially withheld, but are now being produced.) The policy decision to which these e-mails relate is what information concerning aviation security should be considered sufficiently relevant and accurate to be included in testimony at an open congressional hearing, slightly more than four months after September 11, 2001. Disclosing these e-mails would disclose frank discussions of this policy matter and could inhibit open intra-agency debate in similar circumstances.

6. Documents 2-13 consist of several drafts of Under Secretary Magaw's January 23, 2002 testimony, together with e-mails commenting on the drafts. The policy decision to which this draft relates is the same as for the proceeding document. As above, disclosing these documents would reveal tentative and unverified proposals, conclusions, and opinions, and could inhibit open communications concerning draft public documents and testimony in similar circumstances

7. Documents 14 and 15 consist of e-mail strings dated between May 7 and May 19, 2002 between Leah Meador, a TSA financial official, and TSA procurement officials, concerning an airline security screening company called AvexFlight Support. The policy decision to which these e-mails relate is whether TSA should reimburse Delta Airlines for screening services provided by Avex, absent a contractual requirement to reimburse the airline. Disclosing these e-mails would reveal intra-agency debate and impressions regarding the possible political implications and precedential effect, for the newly created agency, of a decision to reimburse or not to reimburse Delta, and could inhibit open debate in similar circumstances.

8. Document 16 is a collection of approximately 15 related e-mail messages saved on the computer of TSA litigation attorney Janessa Grady, all dated between September 16, 2003 and November 7, 2003. They concern a study performed for TSA by the consulting firm Bearing Point, comparing the performance of passenger and baggage screeners employed by TSA with the performance of private screening firms at five pilot program airports (the "PP5") at which private screening has been reintroduced. The policy matter discussed in these e-mails is whether

the agency should clear its contractor, Bearing Point, to discuss its preliminary findings and conclusions directly with Rep. John Mica, chairman of the House aviation subcommittee, before completing its report. Disclosure of the contents of these documents would reveal internal policy deliberations regarding appropriate communications with Congress, as well as how to evaluate the pilot program, and could inhibit open debate in similar circumstances.

9. Document 17 is an e-mail string dated September 12 and 18, 2003 between Tamara Workman of the Defense Contract Management Agency and several TSA procurement officials and counsel. Similar to the documents described in paragraph 7 above, the policy decisions to which these emails relate are when, and on what basis, TSA would reimburse air carriers for third-party screening services, absent a contractual requirement for reimbursement. As above, disclosing these e-mails would reveal intra-agency debate and impressions regarding the non-contractual factors pertinent to a reimbursement decision, and could inhibit open debate in similar circumstances.

10. Document 18 is an undated Draft Report entitled, "Oversight of Security Screener Contracts" prepared by the Office of Inspector General, Department of Transportation. The draft bears substantive handwritten comments on at least three pages. Moreover, appended to the draft report is a three-page memorandum dated December 17, 2002 from Admiral James Loy, the former Under Secretary of Transportation for Security, to the Inspector General, commenting on the draft report and identifying actions that TSA intended to take in response to the issues raised in the draft. The draft report, the handwritten comments, and the December 2002 memorandum all directly relate to TSA's policies with respect to its continuing oversight and close-out of the security screening contracts. The effect of disclosing this document would be to disclose tentative conclusions reached in the course of the Inspector General's investigation, as well as discussions of the Inspector General's specific policy recommendations to TSA.

11. I declare, upon penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Kip Hawley

KIP HAWLEY

5/9/06

DATED

* * * COMMUNICATION RESULT REPORT ( MAY. 11. 2006 9:56AM ) * * *

FAX HEADER: TSA, OFC OF COUNSEL

TRANSMITTED/STORED : MAY. 11. 2006 9:32AM

| FILE MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|
| 888 MEMORY TX | | 912027352000 | E-2) 2) 2) 2) 2) | 0/5 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER
E-2) BUSY
E-4) NO FACSIMILE CONNECTION

U.S. Department of Homeland Security
Arlington, VA 22202

Transportation
Security
Administration

FAX COVER SHEET

Office of Chief Counsel

Date: 5/11/06

To: Lauren Aguiar

From: Janesha Grady, TSA

Company: Skadden Arps

Phone Number: 571-227-2602

Fax Number: 212-735-2000

Fax Number: 571-227-

Phone Number:

Total no. of Pages Including Cover: 5

Re: Declaration of Kip Hawley

☐ URGENT ☐ FOR REVIEW ☐ FOR ACTION ☐ PLEASE COMMENT ☐ PLEASE REPLY

NOTES/COMMENTS: Huntleigh v. U.S.

This communication might contain communications between attorney and client, communications that are part of the agency deliberative process, or attorney-work product, all of which are privileged and not subject to disclosure outside the agency or to the public. Please consult with the Office of Chief Counsel before disclosing any information contained in this fax.

# EXHIBIT E

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE
NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

212-735-2235
DIRECT FAX
917-777-2235
EMAIL ADDRESS
LAGUIAR@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 18, 2006

**BY FACSIMILE**

Kyle Chadwick, Esq.
United States Department of Justice
Commercial Litigation Branch, Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Re: *Huntleigh USA Corporation v. United States,*
Index No. 03-2670C (Senior Judge Margolis)

Dear Kyle:

I write regarding the Declaration of Kip Hawley dated May 9, 2006, which was faxed to my office on May 11, 2006 (the "Declaration").

The Court's January 17, 2006 Order required that you "certify that the agency head of the Transportation Security Administration personally considered the contents of, and authorized the assertion of the deliberative process/pre-decisional privilege with regard to, each document for which the defendant asserts that privilege."

After taking nearly four months to produce the required certification, we believe the Declaration you provided does not comply with the Court's order or meet the Government's burden under the relevant case law. Specifically, the Declaration does not speak to -- and we therefore ask that you address -- the following issues: (i) when Mr. Hawley conducted his review of the withheld documents; (ii) whether a formal delegation of authority was made to you (or another government delegatee), and if so, when;[1] and (iii) whether Mr. Hawley properly authorized the assertion of the privilege at the time such assertion was made in December 2005. Given the facial, procedural inadequacies of the Declaration, we believe have not properly invoked the deliberative process privilege and therefore urge you to produce the documents in

---

1 If such a delegation was properly made, please provide a copy of the official delegation with your response.

question promptly. In any event, please provide the requested information by Tuesday, May 23, as we intend to seek the Court's assistance shortly, if necessary.

We also expressly reserve our rights to contest and/or object to substantive aspects of the Declaration, including the lack of precise and certain reasons for the invocation of privilege over each document listed. For example, documents 1-13, referenced in paragraphs four through six of the Declaration, relate to the testimony of John Magaw on January 23, 2002. Huntleigh's position is that the portions of Mr. Magaw's testimony that are relevant for purposes of this case are those in which he stated that the TSA would assume airline screening contracts on February 17, 2002. There is no specific assertion of deliberative process privilege by the Government as to these portions of Mr. Magaw's testimony. Accordingly, documents 1-13 should be produced. Moreover, document 18 appears to be responsive and not covered by the deliberative process privilege. Among other things, the Declaration does not pinpoint the agency decision or policy to which this document contributed or that the document at issue was integral to the Government's deliberative process. We request immediate production of this document.

Finally, please confirm that a copy of the Declaration was provided to Judge Margolis.

I look forward to your prompt response, as we intend to seek relief next week if these issues cannot be resolved to our satisfaction.

Very truly yours,

Lauren Aguiar

Lauren E. Aguiar

# EXHIBIT F

U.S. Department of Justice

Civil Division

PDK:DMC:KChadwick
DJ No. 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

Telephone: (202) 305-7562
Facsimile: (202) 305-7644

*Washington, D.C. 20530*

May 22, 2006

BY FACSIMILE AND MAIL

Lauren E. Aguiar
Skadden, Arps, Slate Meagher& Flom
Four Times Square
New York, NY 10036-6522

Re: Huntleigh USA Corp. v. United States,
Fed. Cl. No. 03-2670 C

Dear Ms. Aguiar:

This responds to your facsimile letter dated May 18, 2006, concerning the Government's assertion of the deliberative process privilege. The court's January 17, 2006 order does not require or suggest that we file the agency head's certification with the court. Therefore, under RCFC 5(d), no filing should be anticipated.

I believe it has been clear, since our first discussions regarding this issue, that Mr. Hawley did not personally authorize the assertion of deliberative process privilege in the Government's original discovery responses in 2005. The privilege was asserted in the first instance by counsel, in accordance with the usual and proper Department of Justice procedures. Mr. Hawley conducted his review in March and April 2006. Because Mr. Hawley is the agency head, no "delegation" was necessary. To the extent any judicial decisions may suggest that a different timing or procedure is required for invoking the privilege, the Government simply disagrees. See, e.g., Kaiser Alum. & Chem. Corp. v. United States, 157 F. Supp. 939 (Ct. Cl. 1959) (sustaining assertion of privilege based upon agency head letter provided after motion to compel was filed); CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680 (1987) (sustaining assertion in part, based upon affidavit attached to defendant's opposition to motion to compel). We also disagree with the arguments in your letter regarding the validity of our assertion of privilege with respect to documents relating to Under Secretary Magaw's congressional testimony.

I trust that the above clarifies the Government's position.

Very truly yours,

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch