IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUNTLEIGH USA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2670C |
| v. | ) | (Senior Judge Margolis) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to the Court's Rules, defendant, the United States, respectfully responds to the motion filed on May 30, 2006 by plaintiff, Huntleigh USA Corporation, requesting the Court to order the production of documents withheld by the Government in discovery upon the grounds of deliberative process privilege.

FACTUAL AND PROCEDURAL BACKGROUND

The Government, having produced more than 25,000 pages of documents, served its privilege log in December 2005. See Pl. Mot. 2. On January 17, 2006, in response to an inquiry from Huntleigh during a hearing on another motion, this Court ordered the Government to "certify that the agency head of the Transportation Security Administration personally considered the contents of, and authorized the assertion of deliberative process/pre-decisional executive privilege with regard to, each document for which the defendant asserts that privilege." Pl. Mot. Exh. B. On May 11, 2006, after, among other things, substantially reducing the number of documents with respect to which we assert the privilege, the Government provided Huntleigh with a declaration of Edmund "Kip" Hawley, Assistant Secretary of the Department of Homeland

Security, Transportation Security Administration, also known as the "TSA Administrator." Pl. Mot. Exh. D.

Mr. Hawley states in his declaration that he "personally reviewed each of the documents" at issue "and determined that the deliberative process privilege applies, for the reasons stated" in the declaration. Hawley Dec. ¶ 3. Mr. Hawley conducted his personal review of the documents, as we believed Huntleigh and the Court understood he would, after the Court's January 17, 2006 order and, perforce, after the Government served its discovery responses and privilege log in this case. The Government has never stated or otherwise attempted to represent that the TSA Administrator was personally involved in, or approved, the initial assertion of deliberative process privilege by Government counsel during discovery. As demonstrated below, the Administrator's involvement at an earlier point was not required.

Mr. Hawley describes in his affidavit 18 "documents" (some of which are collections of documents, such as e-mail messages) for which he has determined to invoke the deliberative process privilege. Among them are 13 documents created during the drafting of testimony that was delivered on January 22, 2002, by John Magaw, then the Under Secretary of Transportation for Security, before the aviation subcommittee of the House Committee on Transportation and Infrastructure, concerning the agency's progress in implementing the requirements of the Aviation and Transportation Security Act of 2001 ("ATSA"), and the state of aviation security. Id. ¶¶ 4-6. The other documents include e-mails discussing whether TSA should reimburse airlines for their subcontracting of airport security services, absent a contractual obligation upon the Government's part to reimburse the air carrier for those costs, id. ¶¶ 7, 9; e-mails discussing how to respond to a request by the chairman of the House aviation subcommittee, Rep. John

Mica, to meet with a contractor preparing a study for TSA, before the completion of that report, id. ¶ 8; and an undated draft report entitled, "Oversight of Security Screener Contracts" prepared by the Office of Inspector General, Department of Transportation, which bears handwritten notes and appended to which is a three-page memorandum dated December 17, 2002 from Admiral James Loy, then the Under Secretary of Transportation for Security, to the Inspector General, commenting on the draft report and identifying actions that TSA intended to take in response to the issues raised in the draft. Id. ¶ 10.

Huntleigh argues in its May 30, 2006 motion that, contrary to the allegedly "uniform case law of this Court regarding the deliberative process privilege, [the Government] failed to properly and timely assert the privilege in the first instance, then submitted a post hoc, facially inadequate declaration by the head of the TSA." Pl. Mot. 2. Huntleigh asks the Court to hold the privilege inapplicable to all of the documents and order their immediate production. Id. at 10. We demonstrate below that the Court should deny the motion in its entirety, as our invocation of the privilege is both procedurally correct and substantively sound.

## ARGUMENT

### I. The Government's Assertion Of Privilege Is Procedurally Proper

This Court recognizes the deliberative process (also called Governmental or executive) privilege for "inter- and intra-agency deliberative communications or official information," in order to shield from disclosure "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680, 686 (1987) (quoting Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979

(D.C. Cir. 1967)). Documents qualifying for the privilege must have been created in advance of a "policy" decision, Walsky Constr. Co v. United States, 20 Cl. Ct. 317, 320 (1990), and must reflect the "interchange of recommendations and deliberations that contribute to the decisionmaking or policymaking process." CACI, 12 Cl. Ct. at 687.

Courts have upheld assertions of Governmental privilege as to entire documents that contain both deliberative and strictly factual material, when the two are necessarily intertwined. See, e.g., Kaiser Alum. & Chem. Corp. v. United States, 141 Ct. Cl. 38, 157 F. Supp. 939, 942-44 (1979). Agency heads or their direct delegees must provide sworn, "precise and certain reasons" supporting nondisclosure. Pacific Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 135 (2006) ("PG&E"); Walsky, 20 Cl. Ct. at 320; see also Marriott Inter. Resorts, L.P. v. United States, 437 F.3d 1302, 1306 (Fed. Cir. 2006). Although this Court ordered the Government to provide a statement by the head of TSA in support of the deliberative process privilege prior to Huntleigh's filing any motion, that is not the ordinary procedure in the Court of Federal Claims.

Huntleigh relies upon PG&E as an alleged example of "the uniform case law of this Court" supporting the argument that the agency head must personally invoke the deliberative process privilege "at the time" the Government first asserts the privilege in discovery. Pl. Mot. 2, 5; see also id. at 6 (referring to "settled case law"). Huntleigh is mistaken about both PG&E and the weight of prior precedent. Rather, the practice of this Court, and most (but not all) other Federal courts, has been to require the agency head to execute a sworn statement in support of the deliberative process privilege only in connection with the Government's response to a motion to compel production of the documents which were withheld upon the basis of the privilege. Had the Court held in PG&E that the deliberative process privilege must be formally invoked by the

agency head at the time a privilege log is produced, or else the assertion of privilege is invalid, that ruling would be contrary to the weight of authority and unprecedented in this circuit.

However, in an unpublished order in April 2006, granting in part and denying in part the Government's motion for reconsideration of the published PG&E decision, the PG&E Court clarified that it had not held that the Government "waived the right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion to compel to execute affidavits in support of its assertion of the privilege . . . . Rather, the court merely found such practice to be 'procedurally deficient,' thereby eroding the credibility of defendant's claim of the privilege." Pacific Gas & Elec. Co. v. United States, No. 04-74C, slip op. at 4 (Fed. Cl. April 27, 2006) (quoting 70 Fed. Cl. at 143), avail. in CM/ECF. The PG&E Court expressly "recognize[d]" on reconsideration, furthermore, "that there are authorities that have stated that the deliberative process privilege need not be formally invoked until after the opposing party files a motion to compel. See e.g., In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997); Abramson v. United States, 39 Fed. Cl. 290, 294 n.3 (1997)." Slip op. at 5 n.3 (emphasis added).

This Court has long followed the procedure endorsed in Sealed Case and Abramson for invoking and supporting the deliberative process privilege. Contrary to PG&E, this settled practice is not "procedurally deficient." 70 Fed. Cl. at 143. In addition to the two decisions cited by the PG&E Court on reconsideration, decisions of this Court, the Court of Claims, and other courts which support the position that the agency head may prepare and execute an affidavit invoking a Governmental privilege after the Government's initial discovery responses, in response to a motion to compel, include, e.g., Kaiser Aluminum, 157 F. Supp. at 947 (sustaining assertion of privilege based upon letter provided after motion to compel was filed); CACI Field

Services, 12 Cl. Ct. at 683 & n.6 (sustaining assertion in part, based upon affidavit attached to opposition to motion to compel); DOE v. Brett, 659 F.2d 154, 155 (Temp. Emer. Ct. App. 1981) ("[A]ffidavits or testimony are necessary . . . only if the agency wishes to avoid in camera inspection of the documents . . . ."); and Tri-State Hospital Supply Corp. v. United States, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005) ("[T]he government had no obligation to formally invoke the privilege in advance of the motion to compel[.]"). See also SEC v. Downe, No. 92-Civ-4092, 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994) (applying Local Rule to assertion of investigative files privilege); National Inst. of Mil. Justice v. DoD, 404 F. Supp. 2d 325, 339-40 (D.D.C. 2005) (relying upon supplemental declaration filed in Freedom of Information Act case). But see, e.g., Anderson v. Marion Cty. Sheriffs Dept., 220 F.R.D. 555 (S.D. Ind. 2004); Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992), cited in Pl. Mot. 5-6.

Huntleigh also cites Jade Trading, LLC v. United States, 65 Fed. Cl. 487 (2005), in support of its argument that the agency head's decision to invoke deliberative process privilege must be contemporaneous with the Government's discovery responses. Pl. Mot. 6. But Jade Trading does not so hold – or even support that argument. To the contrary, after rejecting the Government's "purported invocation of the executive privilege by individuals other than the head of an agency or department," this Court granted the Government approximately two weeks either to produce the documents at issue "or [to] submit declarations asserting the privilege by the Commissioner of the IRS and the Secretary of the Treasury." 65 Fed. Cl. at 497 (emphasis added). Had the Court agreed with Huntleigh that the privilege is forfeited unless the agency head personally approves the invocation of the privilege in the Government's privilege log, it would not have allowed the Government the opportunity to prepare and file new declarations.

See also Cobell v. Norton, 213 F.R.D. 1, 8 (D.D.C. 2003) ("Defendants will be provided with an opportunity to submit an affidavit that conforms with the requirements for proper invocation of the privilege . . . ."); Scott Paper Co. v. United States, 943 F. Supp. 489, 498 (E.D. Pa. 1996) (similar); Pierson v. United States, 428 F. Supp. 384, 395 (D. Del. 1977) (similar).

The Government provided Mr. Hawley's declaration to plaintiff, at the Court's direction, before Huntleigh filed the instant motion. See Pl. Mot. 3. As noted above, a declaration of the agency head is not ordinarily required until after a motion has been filed. Accordingly, the Government has amply satisfied the procedural requirements under this Court's case law for asserting the deliberative process privilege during discovery, and for supporting that assertion.

Huntleigh somewhat confusingly raises the issue of whether there was a "formal delegation" of Mr. Hawley's authority to determine the applicability of the deliberative process privilege. Pl. Mot. 3, 6. As Mr. Hawley is the head of TSA, which is a distinct agency, see 6 U.S.C. § 203; 49 U.S.C. § 114(b), no delegation was necessary and none occurred. Huntleigh appears to be arguing that Mr. Hawley could or should have "delegated" to counsel of record from the Department of Justice the authority to assert the privilege in the Government's discovery responses. As noted above, the weight of authority requires no such delegation. This should not be surprising, given that involving agency heads in discovery responses on a routine basis, prior to any motion practice challenging an assertion of privilege, would be impracticable.

## II. Mr. Hawley Identifies Proper Grounds For Invoking the Privilege

Huntleigh argues that, assuming the privilege was timely invoked, Mr. Hawley's declaration does not provide the necessary "precise and certain reasons" why the confidentiality of the documents should be maintained. Pl. Mot. 7-9 (quoting Walsky, 20 Cl. Ct. at 320).

Huntleigh cites what it terms "examples" of this alleged defect. Id. at 8. However, because Huntleigh makes specific arguments only with respect to these "examples," those are the only arguments to which we can, or need, respond.[1]

Huntleigh's entire criticism of Mr. Hawley's discussion of the series of e-mails and other documents relating to the congressional testimony delivered in January 2002 by the Under Secretary of Transportation for Security (documents 1-13) is the allegation that Mr. Hawley does not "refer[] to any final agency policy that resulted." Id. This is neither true nor relevant. It is untrue, in that Mr. Hawley explains that, because the Aviation and Transportation Security Act had been enacted only approximately 60 days before Mr. Magaw's testimony, the preparation of that testimony necessarily presented "numerous, fundamental policy decisions regarding how to measure TSA's progress in meeting the requirements of ATSA, how to define TSA's broader mission, and how to communicate these conclusions to Congress." Hawley Dec. ¶ 4.

The policy questions were what could and should be said in an open session of Congress about the status of aviation security. The language chosen by Mr. Magaw after the deliberations during drafting appears in the text of the testimony as delivered (which has been produced to plaintiff). See id. ¶¶ 4-6. "Disclosing these [drafting documents] would disclose frank discussions of this policy matter and could inhibit open intra-agency debate in similar circumstances." Id. ¶ 5. It is difficult to imagine what further explanation could be provided, or would be useful. Huntleigh's criticism is irrelevant, moreover, because the deliberative process "privilege [is not] negated by defendant's failure, in some cases, to identify a later, specific

[1] Should the Court conclude that any of Huntleigh's arguments may have merit, we respectfully request the opportunity to submit the pertinent document or documents for in camera review. See Sealed Case, 121 F.3d at 735-36.

agency decision that was based on the 'pre-decisional' documents." Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 312 (2002) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 n.18 (1975) (construing Freedom of Information Act)).

Huntleigh asserts without elaboration that "document 16 appears to be an utterly unprivileged e-mail chain unconnected to the adoption of any agency policy . . . ." Pl. Mot. 8. However, Mr. Hawley explains that

> [t]he policy matter discussed in these e-mails is whether the agency should clear its contractor, Bearing Point, to discuss its preliminary findings and conclusions directly with Rep. John Mica, chairman of the House aviation subcommittee, before completing its report [on a private security screening pilot program]. Disclosure of the contents of these documents would reveal internal policy deliberations regarding appropriate communications with Congress, as well as how to evaluate the pilot program, and could inhibit open debate in similar circumstances.

Hawley Dec. ¶ 8. The TSA head has, therefore, identified the specific policy questions at issue in these communications and the specific harm that could result from their disclosure. Huntleigh offers no reasoned response.

Huntleigh argues that Mr. Hawley's description of document 18 contains "no detail as to how it contributed to the give-and-take of the deliberative process or any resulting definitive agency policy." Pl. Mot. 8. Mr. Hawley plainly states, however, that the document consists of a draft report by the Department of Transportation's Office of Inspector General, concerning contract administration by TSA, and TSA's comments responding to the Inspector General's draft recommendations for agency action. Hawley Dec. ¶ 10. Document 18 not only "contributed to . . . give-and-take," Pl. Mot. 8 – it is give and take regarding specific policy recommendations. "Agencies are, and properly should be, engaged in a continuing process of examining their

policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." Sears, 421 U.S. at 153 n.18. Despite Huntleigh's desire for additional "detail," Pl. Mot. 8, the TSA Administrator's affidavit amply supports the assertion of deliberative process privilege with respect to document number 18.

Huntleigh's only other argument regarding the substance of Mr. Hawley's declaration is that the Administrator "makes [only] boiler-plate assertions of harm . . . ." Pl. Mot. 8. Huntleigh cites no examples. In fact, Mr. Hawley describes with particularity why each type of document at issue should not be disclosed. It is impossible, of course, for anyone to predict with certainty that the disclosure of any particular document will lead to specific undesirable consequences. However, Mr. Hawley explains TSA's legitimate interest in preserving the confidentiality of each of these documents, in order to foster frank and robust policy debate within the agency. See Sears, 421 U.S. at 153 n.18. Huntleigh's argument, in a footnote, that the concerns of the agency head can be addressed by making these documents subject to the protective order in this case is unprecedented and should be rejected, as it proves too much and would effectively negate the privilege in every case. Pl. Mot. 8 n.4.

## CONCLUSION

For the reasons given above, we respectfully request the Court to deny plaintiff's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

OF COUNSEL:

AMY ALLEN RUGGERI
Assistant Chief Counsel
For Litigation

JANESSA L. GRADY
Attorney-Advisor
Office of the Chief Counsel
Transportation Security
Administration

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

June 8, 2006

CERTIFICATE OF FILING

I certify that on June 8, 2006, the foregoing was filed electronically. Service is complete upon filing and parties and others may access this filing through the Court's system.

s/Kyle Chadwick